Timothy Lane GRIBBLE, Appellant,

v.

The STATE of Texas, Appellee.

No. 70773.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 14, 1990.

Rehearing Overruled Feb. 20, 1991.

Certiorari Denied June 24, 1991.
See 111 S.Ct. 2856.

Thomas W. McQuage, Galveston, for appellant.

Michael J. Guarino, Dist. Atty., and Roger Ezell, Asst. Dist. Atty., Galveston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

Appellant was convicted of capital murder, it being alleged that he committed the murder of Elizabeth Jones[1] during the course of kidnapping her. See V.T.C.A., Penal Code § 19.03(a)(2). After the jury answered the submitted special issues in the affirmative, the trial judge assessed appellant's punishment at death. Art. 37.-071(e), V.A.C.C.P. Appeal to this Court is automatic. See Art. 37.071(h), V.A.C.C.P.; Rule 40(b)(1), Tex.R.App.Pro.

In the interest of justice, we will address and decide the issue whether the evidence is sufficient to establish the allegation that went to the underlying felony offense of kidnapping, i.e., it is alleged in the indictment in this cause that appellant committed the murder of Jones during the course of kidnapping her, which caused the offense of murder to be elevated to the offense of capital murder. See V.T.C.A., Penal Code Sec. 19.03(a)(2). We will hold that the evidence is sufficient to sustain that allegation of the indictment.

Because we interpret appellant's fifth, twelfth, and thirteenth points of error as

---

**1.** The victim, Elizabeth Jones, was a 36 year old professional woman. She was a Phi Beta Kappa in mathematics who worked on space shuttle software development at NASA. She had a managerial position in the verification department at NASA.

challenging the sufficiency of the evidence to sustain his capital murder conviction, we will also address, but will overrule, these points of error.[2] Furthermore, we will address and sustain appellant's points of error numbered fourteen, fifteen, sixteen, seventeen, and eighteen.[3] We will not address appellant's other points of error.[4]

[2]. (Point Five):
   The admissible evidence adduced at the trial of the case was legally insufficient to support the appellant's conviction of capital murder, or of any lesser included offense;
   (Point Twelve):
   The district court erred in denying the appellant's motion for instructed verdict, and in entering its judgment of conviction of capital murder, because the evidence was legally insufficient to prove the elements of the offense of kidnapping by corroborating the statements of the defendant admitted into evidence;
   (Point Thirteen):
   The evidence was legally insufficient to sustain a conviction of capital murder, because the State failed to disprove beyond a reasonable doubt those portions of the appellant's statements, offered into evidence by the State, which establish that the appellant did not deliberately cause the death of Elizabeth Jones.

[3]. These points of error assert that the trial court erred by:
   (Point 14): Failing to instruct the jury that any mitigating evidence may be sufficient to cause the jury to have a reasonable doubt as to an affirmative answer to any special issue;
   (Point 15): Failing to instruct the jury that a negative answer to any of the special issues should be made if the evidence mitigating against the death penalty covers a reasonable doubt as to any special issue;
   (Point 16): Failing to instruct the jury to answer any special issue "no" if the jury finds any aspect of the Defendant's character, record, or mental illness or any circumstances of the offense mitigate against imposition of the death penalty;
   (Point 17): Failing to instruct the jury that if any mitigating evidence creates a reasonable doubt that the death penalty is appropriate, the jury should answer either of the special issues "no", independently of whether such evidence is relevant to the special issues, and regardless of what the jury found the answers to the special issues be;
   (Point 18): Failing to submit a third special issue inquiring whether the jury had a reasonable doubt, in view of any mitigating evidence, that the death penalty should not be imposed.

[4]. They are the following:
   (Point One): The District Court erred in admitting the defendant's written statement, given to Mary Wood, a private Investigator, because Ms. Wood failed to advise the Defendant of his Miranda rights in accordance with Article 38.22 of the Texas Code of Criminal Procedure, and the statement was made in the contest of or in response to a custodial interrogation;
   (Point Two): The District Court erred in admitting the Defendant's written statement to Mary Wood, Private Investigator, because the statement was made after the Defendant requested that the interview not proceed, which request was not honored;
   (Point Three): The District Court erred in admitting the Defendant's tape-recorded confession given to law enforcement officers on October 3, 1987, together with all evidence subsequently derived therefrom, because the interrogators refused to honor the Defendant's request to terminate the interrogation;
   (Point Four): The District Court erred in admitting into evidence the fact that the Defendant led Texas Ranger Joe Haralson and Galveston County Sheriff's Department Investigator Wayne Kessler to the remains and purse of Elizabeth Jones, those items of evidence, and all evidence derived therefrom, because those events occurred after the Defendant's unequivocal request to consult with an attorney, which was not honored;
   (Points Six, Seven, and Eight): The District Court erred in overruling the Defendant's challenges for cause to venirepersons Thomas Gray (Point 6), Katalina Ruiz (Point 7), and Donna Jennings Sunseri (Point 8), because these jurors expressed a strong prejudice against the minimum punishment of life imprisonment for the offense of capital murder;
   (Points Nine, Ten, and Eleven): The District Court erred in failing to grant the Defendant's Motion for Mistrial or in overruling Defendant's objection, following several references by State's witnesses and the prosecutor to the unindicted offense of rape or sexual assault upon Elizabeth Jones, at the following points in the trial—a) when Texas Ranger Joe Haralson remarked that the Defendant confessed to raping Elizabeth Jones, b) when the prosecutor deliberately made references to sexual assault when cross-examining a defense witness, c) when the prosecutor made pointed remarks during closing argument;

[5]. The following narrative account of this crime is an abbreviated version of appellant's own

## I.

On September 8, 1987, Elizabeth Jones disappeared. When she missed work the next day, her friends began to search for her. They hired a private investigator, notified local law enforcement authorities, and called area hospitals, all to no avail. Several weeks later, appellant confessed to killing her and showed the police where he had concealed her body.[5]

According to a composite of various statements appellant gave to the police and private investigators over a period of time, appellant admitted that he had been working as a roofer on a crew remodeling the deceased's home, and that on the date of her disappearance he was the last workman at the site and, before leaving, was permitted to use the bathroom in the residence. Later, after eating dinner with his wife and step-children, appellant left home to return several rented videotapes, but found the store to which he went closed. On the way back he drove past the house of Jones, the deceased, and stopped. He could see that Jones had retired for the night, but knocked on the front door anyway. When Jones answered the door, she was dressed only in a robe. Appellant told her that he had lost his wallet, which he hadn't, and wondered if he might have left it in her bathroom. She consented to him entering her house on this pretext. Appellant claimed that thereafter they drank wine, talked, and had consensual sex. Appellant also claimed that the deceased expressed a desire to visit Paris, France, and that he took her to the Houston Intercontinental Airport the next morning in exchange for the promise of substantial payment. The latter statements were proved by the police to be false. Appellant also admitted that once inside of Jones' residence he grabbed Jones' wrist after which she resisted but he claimed that she willingly participated in sexual relations with him for several hours. Afterwards, they talked for a while and watched televison. Eventually, appellant fell asleep on her bed.

Sometime later, still before dawn, appellant woke up. The deceased had made coffee, and urged appellant to leave so that she could dress for work. He asked her not to tell anyone about his being there but, in spite of his pleas, she told him that she was going to notify the police about how he had sexually abused her. Panicked by her refusal to relent, appellant ordered her into his truck. He made her lie down with her head in his lap so that she wouldn't know where they were going. After driving aimlessly for an hour, he finally stopped at a secluded place in the county, approximately ten miles from Jones' residence. Appellant's intention at that time was apparently to tie Jones up so that he would have time to see his family and leave town before she could report him to the police, but when his intentions became clear to her, she began to scream for help. In an effort to silence her, appellant looped the sash from her robe around her neck and pulled it tight. To his surprise, she was dead within a few minutes. He then dragged her body beneath a tree and covered it with brush. When appellant returned to his truck he discovered the deceased's purse and, after filling it with rocks, threw it into a nearby lake.

Based on the above, police investigators discovered the remains of Elizabeth Jones' body and her purse in exactly the locations appellant described. Jones' body and her purse were found almost a month after she had been reported missing.

## II.

■ In his fifth point of error, appellant maintains that the confession offered against him at trial was illegally obtained and that, absent its introduction, the evidence was insufficient to connect him with the offenses alleged in this case. In making this argument, appellant overlooks the principle of law that the sufficiency of the evidence to sustain appellant's conviction is determined by evaluating the probative weight of *all* the evidence that the trial judge permitted the jury to consider, including erroneously admitted evidence. *Beltran v. State*, 728 S.W.2d 382, 389 (Tex. Cr.App.1987); *Porier v. State*, 662 S.W.2d 602, 606 (Tex.Cr.App.1984). Because appellant does not contend that *all* the evidence admitted at his trial was insufficient to

---

statements to police and private investigators. No other evidence in the record tends to connect him with the crime, nor is there any evidence remotely suggesting that events transpired in a way other than as described by him.

Thus, although appellant's account may seem implausible in certain particulars, it is nevertheless uncontroverted by any evidence affirmatively suggesting an alternative scenario.

sustain his conviction for capital murder, his fifth point of error is overruled. *Faulder v. State*, 745 S.W.2d 327, 330 (Tex. Cr.App.1987); *Collins v. State*, 602 S.W.2d 537 (Tex.Cr.App.1980).

## III.

■ Appellant claims in his thirteenth point of error that his confession contained exculpatory material which the State failed to disprove, rendering the evidence insufficient to support his conviction.

Prior to adoption of the Texas Rules of Criminal Evidence, effective September 1, 1986, our case law provided that "[w]here the state puts in evidence the statements of the accused party which exculpates the accused, and does not directly or indirectly disprove them, the accused is entitled to an acquittal." *Palafox v. State*, 608 S.W.2d 177 (Tex.Cr.App.1980), quoting from *Banks v. State*, 56 Tex.Cr.R. 262, 265, 119 S.W. 847, 848 (1909). Although application of this rule was subject to considerable disagreement, we have since held "that for cases tried after the effective date of Tex. R.Crim.Evid. Rule 607, the State will not be bound by exculpatory statements which previously fell under the voucher rule pursuant to *Palafox*, 608 S.W.2d 177." *Russeau v. State*, 785 S.W.2d 387, 390 (Tex.Cr. App.1990).

In this cause, the State had the burden to prove beyond a reasonable doubt that appellant killed his victim intentionally during the course of kidnapping her or attempting to kidnap her in order to establish the offense of capital murder. Because appellant's confession reports only an accidental or negligent killing of the deceased, it is alone insufficient for this purpose. But it does not follow that the State's burden is somehow made greater by introduction of appellant's confession into evidence. Requiring the State to disprove beyond a reasonable doubt that appellant killed the deceased unintentionally is neither qualitatively nor quantitatively different than requiring it to prove beyond a reasonable doubt that he killed her intentionally. Accordingly, the fact that the State offered appellant's confession, which admitted to an unintentional killing of the victim, does not in the least affect the State's burden of proof as regards appellant's culpable mental state when the offense was committed.[6]

Because appellant does not claim that the evidence, taken as a whole, was insufficient to prove that he killed the deceased intentionally, we overrule his thirteenth point of error.

## IV.

■ In point of error number twelve, appellant asserts that "The District Court erred in denying the Defendant's Motion for Instructed Verdict, and in entering its judgment of conviction of capital murder, *because the evidence was legally insufficient to prove the elements of the offense of kidnapping by corroborating the statements of the Defendant admitted into evidence.*" (Our emphasis.)[7]

6. Quite apart from any judicially-created rule, the Penal Code has long provided that defenses raised by evidence from any source, including that offered by the defendant, must be disproven beyond a reasonable doubt by the State. The Penal Code even requires that the jury be instructed to such effect. *See* V.T.C.A., Penal Code § 2.03(d). As applied to statutory defenses, therefore, the rule articulated in cases such as *Palafox* was merely a logical corollary of the general rule respecting burdens of proof on defensive issues under the Penal Code, and required no different or greater proof than that already prescribed by statute law. But the claim of accident or negligence in appellant's confession was not a defense within the meaning of the Penal Code, since it did not admit the offense alleged and then set up an excuse or justification for its commission. Rather, it merely denied an essential element of the crime.

Of course, under the Penal Code, defendants have the burden to prove "affirmative defenses" by a preponderance of evidence. V.T.C.A., Penal Code § 2.04(d). We express no opinion whether the rule of *Palafox*, to the extent it may still apply to cases tried before September 1, 1986, requires the State to disprove any "affirmative defenses" in the confessions it introduces.

7. In disposing of this point of error we assume, without deciding, that appellant's confession does, indeed, admit a kidnapping of the deceased. See, however, *post*. So far as we are able to determine from studying his motion for instructed verdict at trial and his brief to this Court on appeal, appellant contends only that,
... it was just as likely that Ms. Jones was murdered elsewhere as the State's hypothesis

We pause to point out that the record reflects that appellant did not present any evidence after the State rested its case and after appellant's motion for an instructed verdict of not guilty was overruled by the trial judge. Cf. *Kuykendall v. State*, 609 S.W.2d 791 (Tex.Cr.App.1981).

This Court has long subscribed to a variant of the common law rule that an extrajudicial confession of the accused is insufficient to support conviction unless corroborated.[8] In Texas, as in most other American jurisdictions, the rule has been construed to require independent evidence of the *corpus delicti*, not merely support for credibility of the confession.[9] Although often inconsistent in our understanding of

that Ms. Jones was abducted from her home, kidnapped and taken to that spot, and then murdered. Also, contrary to the State's hypothesis of kidnapping, the investigating police officer could observe at the Defendant's [sic] residence no sign of a struggle or anything broken.

Appellant's Brief, pp. 51–52. We take this argument to mean that appellant urges a lack of corroborative evidence showing the deceased was, while still alive, "mov[ed] ... from one place to another" or that, if she was moved, it was "without consent[.]" *See* V.T.C.A., Penal Code § 20.01(1). In short, he claims there is no evidence even to corroborate the hypothesis that the deceased was restrained. We address appellant's point of error strictly from this perspective and express no opinion whether the evidence fails to corroborate other elements of kidnapping.

8. Basic information about the history and purposes of the rule may be found at 7 WIGMORE, EVIDENCE §§ 2070–2074 (1963) and Note, *Proof of the Corpus Delicti Aliunde the Defendant's Confession*, 103 U.PA.L.REV. 638 (1955).

9. See generally McCORMICK, EVIDENCE § 158 (2d ed. 1972).

10. See, e.g., text accompanying footnotes 48 and 54 in 25 TEX.JUR.3d. *Criminal Law* § 3437 (1983).

11. A significant body of case law from this Court, appearing sporadically over the years, is to the contrary. *See, e.g., Lott v. State*, 60 Tex. Cr.R. 162, 131 S.W. 553, 555 (1910); *Black v. State*, 137 Tex.Cr.R. 173, 128 S.W.2d 406, 409 (1939); *Franklin v. State*, 140 Tex.Cr.R. 251, 144 S.W.2d 581 (1940); *Bell v. State*, 149 Tex.Cr.R. 509, 196 S.W.2d 923, 924 (1946); *Threet v. State*, 157 Tex.Cr.R. 497, 250 S.W.2d 200 (1952); *Rios v. State*, 398 S.W.2d 281, 282 (Tex.Cr.App.1966);

the term,[10] we have usually held *corpus delicti* to mean harm brought about by the criminal conduct of some person. *Bridges v. State*, 172 Tex.Cr.R. 655, 362 S.W.2d 336, 337 (1962). Thus, the extrajudicial confession of a criminal defendant must be corroborated by other evidence tending to show that a crime was committed. *Brown v. State*, 576 S.W.2d 36, 42–43 (Tex.Cr.App. 1979) (opinion on rehearing); *Watson v. State*, 154 Tex.Cr.R. 438, 227 S.W.2d 559, 562 (1950). It need not be corroborated as to the person who committed it,[11] since identity of the perpetrator is not a part of the *corpus delicti* and may be established by an extrajudicial confession alone.[12]

*Perez v. State*, 432 S.W.2d 954 (Tex.Cr.App. 1968).

However, in *Self v. State*, 513 S.W.2d 832, 834–835 (Tex.Cr.App.1974), we noted the discrepancy and disapproved prior opinions holding or intimating that the *corpus delicti* of a crime includes identity of the person who committed it. *See also Soffar v. State*, 742 S.W.2d 371, 375 (Tex.Cr.App.1987); *Scott v. State*, 732 S.W.2d 354, 358 (Tex.Cr.App.1987); *Streetman v. State*, 698 S.W.2d 132, 134–135 (Tex.Cr.App. 1985). Yet our own application of the standard sometimes belies any real understanding of, let alone committment to, the rule. Take, for example, our opinion in *Jackson v. State*, 652 S.W.2d 415, 419 (Tex.Cr.App.1983), decided *en banc* without written dissent. After correctly identifying the *corpus delicti* of murder as "death caused by criminal means" and holding that an extrajudicial confession must be corroborated as to the *corpus delicti*, we then concluded that "[t]he evidence is sufficient to corroborate appellant's confession that she struck the child with her elbows[,]" even though identity of the criminal actor clearly needs no corroboration. Still, in an ironic twist, we reversed the conviction for insufficient evidence to show the cause of death, a matter which undoubtedly was a part of the *corpus delicti* and thus required at least some evidentiary support independent of the confession. *See also Johnson v. State*, 691 S.W.2d 619, 622–624 (Tex.Cr.App.1984).

12. The jury was instructed in this case that,

... if you find from the evidence beyond a reasonable doubt, that the defendant made a confession to the commission of the offense of kidnapping or attempted kidnapping, still, you cannot convict the defendant of capital murder unless you find from the evidence beyond a reasonable doubt that there is *other evidence before you in this case which, of itself, tends to connect the defendant with the crime of kidnapping or attempted kidnapping,*

*Dunn v. State,* 721 S.W.2d 325, 333–334 (Tex.Cr.App.1986); *Harris v. State,* 516 S.W.2d 931, 932 (Tex.Cr.App.1974); *Estes v. State,* 160 Tex.Cr.R. 632, 274 S.W.2d 411, 412 (1955).

Although we recently confronted the problem in a related context, we have not yet expressly decided whether an extrajudicial confession of a defendant must be corroborated as to multiple elements of the underlying felony offense.[13] Appellant's twelfth point of error clearly presents the question here. The offense of capital murder under our law, as charged in the instant cause, requires not only the commission of murder as defined elsewhere in the Penal Code, but also that the murder be committed during the course of kidnapping. Kidnapping is a separate crime under the Penal Code and one which, as with all crimes, has its own *corpus delicti. See* V.T.C.A., Penal Code § 20.03(a). Appellant maintains that, while the *corpus delicti* of murder was shown by evidence apart from his extrajudicial confession, the *corpus delicti* of kidnapping was not. We disagree.

> if any, *separate and apart from the alleged confession,* if any, *of defendant's,* and if you have a reasonable doubt that there is such *other evidence that the offense of kidnapping or attempted kidnapping, as alleged, in fact occurred,* then you will acquit the defendant of capital murder and consider whether he is guilty of murder. (Emphasis added.)

As is apparent from the emphasized portions of this charge, the jury was told that *it might not convict of capital murder without corroboration both connecting appellant with commission of kidnapping or attempted kidnapping and establishing the corpus delicti of one such offense.* The requirement of corroboration which "tends to connect the defendant with the crime" is characteristic of the rule applicable to corroboration of accomplice testimony, and does not apply to confessions of the accused. *See* Art. 38.14, V.A.C.C.P.; *Kincaid v. State,* 131 Tex. Cr.R. 101, 97 S.W.2d 175, 177 (1936). However, because the jury was here instructed not to convict appellant without other evidence showing his identity as the criminal actor, a conviction was not authorized in the instant cause without such evidence. *Boozer v. State,* 717 S.W.2d 608 (Tex.Cr.App.1984). *See also, Benson v. State,* 661 S.W.2d 708 (Tex.Cr.App.1983), and *Ortega v. State,* 668 S.W.2d 701 (Tex.Cr.App. 1983). Appellant, however, does not complain on appeal that there was insufficient evidence apart from his confession actually connecting him with commission of the offense.

Because the essential purpose of the corroboration requirement is to assure that no person be convicted without some independent evidence showing that the very crime to which he confessed was actually committed, we agree that the *corpus delicti* of capital murder includes more than merely homicide by a criminal agency.[14] In the present context, we hold that *evidence independent of appellant's confession was required to show that his victim had been kidnapped.*

Such evidence need not, however, be sufficient by itself to prove the offense of kidnapping. *Honea v. State,* 585 S.W.2d 681, 684 (Tex.Cr.App.1979); *Valore v. State,* 545 S.W.2d 477, 479 (Tex.Cr.App. 1977). Because the rule peremptorily reduces the weight of admissible evidence for policy reasons originated by this Court without express legislative sanction, we have held that the quantum of independent evidence necessary to corroborate the *corpus delicti* in a criminal prosecution rely-

---

13. Relying on *Holladay v. State,* 709 S.W.2d 194 (Tex.Cr.App.1986), which construed Art. 38.14, V.A.C.C.P., the accomplice witness statute, we recently held that the testimony of an accomplice in a capital murder prosecution need not be corroborated as to the elements which distinguish murder from capital murder. *Romero v. State,* 716 S.W.2d 519, 520 (Tex.Cr.App.1986) ("aggravated sexual assault" elements); *Anderson v. State,* 717 S.W.2d 622, 630–631 (Tex.Cr.App.1986) ("remuneration" elements); *May v. State,* 738 S.W.2d 261, 266 (Tex.Cr.App. 1987) ("robbery" elements). However, this is so in large measure because, unlike extrajudicial confessions, testimony of an accomplice need be corroborated only as to facts "tending to connect the defendant with the offense committed[,]" and not as to the *corpus delicti* itself.

14. As appellant points out in his brief, our opinion in *Penry v. State,* 691 S.W.2d 636, 648–649 (Tex.Cr.App.1985), intimates that this is true, without specifically discussing the issue, by simply observing, in context of the capital offense there alleged, that "... the corpus delicti consists of a victim whose death was caused by the criminal act of another *in the course of committing or attempting to commit rape."* Although *Penry* is of only the most attenuated precedential value in the instant cause, we note that our holding here is not inconsistent with our disposition of the similar claim presented there. *See also White v. State,* 591 S.W.2d 851, 862–864 (Tex.Cr.App.1979).

ing upon the extrajudicial confession of an accused need not be great.[15] *Self v. State,* 513 S.W.2d at 835–837. So long as there is some evidence which renders the *corpus delicti* more probable than it would be without the evidence, we believe that the essential purposes of the rule have been served. *Woolridge v. State,* 653 S.W.2d 811, 816 (Tex.Cr.App.1983); *White v. State,* 591 S.W.2d at 864.

■ While there is little, apart from appellant's confession, to suggest that Elizabeth Jones, the deceased, was moved from her residence without her consent and while still alive to the place where her body was ultimately discovered, we are not persuaded that the record is utterly devoid of evidence to this effect. The distinctions between the offenses of attempted kidnapping and kidnapping are unimportant here because the problem relating to the sufficiency of the evidence as to the one is equally applicable to the other, i.e., from the facts, if the evidence is sufficient as to the one, it is surely sufficient as to the other. Certainly the circumstances militate in favor of a conclusion that the deceased would not willingly have travelled, either alone or in the company of another, to an uninhabited area of the county, carrying a purse and wearing nothing but a bathrobe. The discovery of her body under such conditions does, in our view, render it more likely that she was taken to the scene without consent. Whether she was alive at the time is, of course, a separate question.[16]

Neither the medical examiner nor other investigating officials could determine *where* Elizabeth Jones was murdered. However, her body was found some four weeks after she was reported missing in a remote field in Galveston County approximately ten miles from her residence. It is, of course, possible that she was strangled at home and then moved by appellant to the country. However, at least three circumstances seem to render this hypothesis less likely. In the first place, there is no apparent motive for moving the body under circumstances such as are presented here. If the deceased were really killed at home, we believe that a rational trier of fact might well expect appellant to have left her body there. Certainly, it is not apparent that doing so would somehow have cast greater suspicion on him, whereas the very act of transporting a dead body in a pickup truck, even in the early morning hours, would doubtlessly have increased the risk of his being seen by others.

Moreover, if Elizabeth Jones were murdered at home, we believe that a rational trier of fact would expect the investigating officers to find some evidence of a struggle. Instead, they discovered nothing to indicate any disturbance at her residence— no sign of injury to any person, and nothing broken, damaged or overturned. Neighbors reported hearing no screams or other loud noises on the night in question.

Finally, the fact that the deceased's purse was also taken would, we believe, imply to a rational trier of fact that she

15. Indeed, when evidence independent of the confession *is* alone sufficient to prove *corpus delicti,* the jury need not even be instructed that an extrajudicial confession must be corroborated. For a partial genealogy of this interesting anomaly, in which the rule is transformed from an isolated holding of harmlessness based on overwhelming evidence into a general doctrine of no error based on the sufficiency of evidence, see *Willard v. State,* 27 Tex.App. 386, 11 S.W. 453 (1889), *Mayfield v. State,* 92 Tex. Cr.R. 532, 244 S.W. 819 (1922), *Johnson v. State,* 117 Tex.Cr.R. 103, 36 S.W.2d 748 (1931), *Smith v. State,* 157 Tex.Cr.R. 21, 246 S.W.2d 187 (1952), *Engledow v. State,* 407 S.W.2d 789 (Tex. Cr.App.1966), *Honea v. State,* 585 S.W.2d 681, 687 (Tex.Cr.App.1979), and *Baldree v. State,* 784 S.W.2d 676, 686–687 (Tex.Cr.App.1989).

16. We accept for purposes of analysis that a dead body cannot be kidnapped. Under V.T. C.A., Penal Code § 20.03(a), kidnapping is defined as the knowing or intentional abduction of a "person." A "person," if not an association or corporation, must be an "individual." An "individual," in turn, is "a human being who has been born and *is alive.*" V.T.C.A., Penal Code § 1.07(a)(17), (27). (Emphasis added) It follows that only corporations, associations and living humans can be kidnapped in violation of § 20.03(a). Since a dead body is none of these things, contrary to a corporation, thus moving it from place to place does not under any circumstances constitute the offense of kidnapping. *See and compare Vaughan and Sons, Inc. v. State,* 737 S.W.2d 805 (Tex.Cr.App.1987).

was alive in appellant's truck when she left her residence. At a minimum, we believe it would seem improbable to any rational trier of fact that appellant would have bothered to take the purse had he murdered her at home. We also believe that, if inclined to steal her money or other valuables, it is more likely that any rational trier of fact would have concluded that appellant would have emptied the purse beforehand. What seems to us to be a far better explanation here is that Elizabeth Jones, the deceased, brought the purse along herself, hoping for some opportunity to get free of her abductor.

Although these circumstances are ambiguous in some respects and far from adequate to support the conclusions they imply, *the evidence required for corroboration of an extrajudicial confession need only render the corpus delicti more probable than it would be without the evidence.* Therefore, *we find that any rational trier of fact could have found that there was some evidence that the corpus delicti of kidnapping was sufficiently corroborated as to the elements about which appellant complains.* Also see the above instruction to the jury that the trial court gave in this cause. His twelfth point of error is, therefore, overruled.

V.

Although we believe that we have sufficiently answered, and correctly overruled, appellant's twelfth point of error, namely, that "[t]he District Court erred in denying the Defendant's Motion for Instructed Verdict, and in entering its judgment of conviction of capital murder, *because the evidence was legally insufficient to prove the elements of the offense of kidnapping by corroborating the stratements of the Defendant admitted into evidence,*" (our emphasis), we also find that we must, in the interest of justice, decide whether the State proved beyond a reasonable doubt that appellant murdered Jones during the course

of kidnapping Jones.[17] We find that the evidence is sufficient.

This Court has repeatedly held that a capital murder indictment need not allege the constituent elements of the aggravating feature which elevates the offense of murder to capital murder. *Beathard v. State,* 767 S.W.2d 423, 431 (Tex.Cr.App. 1989). However, this is not to say that in order to establish the offense of capital murder the State need not prove that the murder occurred during the course of some underlying offense, such as the offense of kidnapping which was alleged in this cause as the underlying offense.

We observe that the San Antonio Court of Appeals, in *Guerra v. State,* 690 S.W.2d 901 (Tex.App.–4th Dist.1985), no pet., henceforth *Guerra,* was confronted with resolving the issue whether the evidence was sufficient to establish that the murder that occurred in that cause was committed during the course of committing the offense of kidnapping or attempted kidnapping. The court of appeals concluded that under the facts that were presented the circumstantial evidence was sufficient to sustain the allegations that went to the underlying offense. We agree with the court of appeals' conclusion.

The court of appeals pointed out that its case was a circumstantial evidence case and that the standard for reviewing the sufficiency of the evidence is the same for either direct or circumstantial evidence cases; namely, an appellate court must examine the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791–2, 61 L.Ed.2d 560, 576–7 (1979). Also see *Purtell v. State,* 761 S.W.2d 360 (Tex.Cr. App.1988); *Marras v. State,* 741 S.W.2d 395, 400 (Tex.Cr.App.1987); *Carlsen v. State,* 654 S.W.2d 444, 447 (Tex.Cr.App. 1983); *Freeman v. State,* 654 S.W.2d 450, 454 (Tex.Cr.App.1983); and *Vanderbilt v.*

17. Sufficiency of the evidence to support a conviction implicates the Fourteenth Amendment to the Constitution of the United States and the

due course of law clause of the Texas Constitution. See Art. I, Sec. 19. E.g., *Acevedo v. State,* 633 S.W.2d 856 (Tex.Cr.App.1982).

*State,* 629 S.W.2d 709, 715–16 (Tex.Cr.App. 1981).

■ We find that the court of appeals in *Guerra* correctly observed that a part of our law of circumstantial evidence is that a conviction based on circumstantial evidence cannot be sustained unless the circumstances exclude every reasonable hypothesis except guilt of the defendant. Proof amounting to no more than a strong suspicion or mere probability of guilt is not sufficient to convict. E.g., *Schershel v. State,* 575 S.W.2d 548, 550 (Tex.Cr.App. 1979); *Bryant v. State,* 574 S.W.2d 109, 111 (Tex.Cr.App.1978). It is not necessary, however, that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Sullivan v. State,* 564 S.W.2d 698, 705 (Tex.Cr.App. 1977); *Flores v. State,* 551 S.W.2d 364, 367 (Tex.Cr.App.1977); *Herndon v. State,* 543 S.W.2d 109, 121 (Tex.Cr.App.1976). However, the State is not required to exclude to a moral certainty every hypothesis that the offense may have been committed by another person; it must only exclude every reasonable hypothesis that might exist from the facts, which hypothesis must be consistent with the facts proved and the circumstances, and the premise that the offense may have been committed by another person must not be out of harmony with the evidence. See e.g., *Sullivan,* supra; *Flores,* supra; *Jones v. State,* 442 S.W.2d 698, 702 (Tex.Cr.App.1969); and *Vanderbilt,* supra, at 716.

■ The elements of kidnapping are that a person: (1) intentionally or knowingly (2) abducts (3) another person. V.T.C.A., Penal Code Sec. 20.03(a). "Abduct" is defined to mean "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." V.T.C.A., Penal Code, Sec. 20.01(2). In this instance, it was incumbent upon the State to prove beyond a reasonable doubt that appellant murdered Jones during the course of kidnapping her.

The State correctly points out the following in its brief (page references to the record omitted):

In the present case, Appellant confessed to panicking when the victim told him she was going to the police [to tell them] about the sexual assault [he had committed upon her]. He then had her get into his truck. She was wearing nothing but a robe. He made her lie down in the truck so she wouldn't know where she was. He then drove around for a long time. Appellant eventually stopped the truck in a remote location some ten miles from the victim's house. There he strangled her. He then threw her purse in some water at another remote location. After Appellant confessed, he led officers to the remote locations where the body and purse were found. (Page 30.)

The facts also reflect that Jones, the deceased, was discovered missing on September 9, 1987, and that her body was found almost one month later as a result of appellant's oral statement to the police that led them to where appellant said he had left her body and purse. It was established that appellant was the last person to have seen Jones alive at her residence, where appellant had worked as a roofer on her house. Over a month later, appellant was arrested in Tennessee for this offense. Although appellant did not admit where he murdered Jones, he admitted that he killed Jones, hid her body in a secluded location, and disposed of her purse at a different location.

We have previously pointed out some possible reasonable hypotheses that might be applicable to this cause. We believe that we have sufficiently demonstrated how any rational trier of fact could have concluded that the State disproved them. We also find that any rational trier of fact could have determined the evidence was sufficient to show the murder of Jones occurred in the course of appellant's committing the offense of kidnapping of Jones, and that the State disproved any outstanding reasonable hypotheses.

## VI.

The record reflects that at the penalty phase of the trial appellant requested that the judge give the jury various instructions which would have collectively authorized the jury, irrespective of its answers to the statutory punishment questions, to decide that he should not be put to death.[18] He claims that the Eighth Amendment of the United States Constitution entitled him to such an instruction because he proffered mitigating evidence at trial which, for reasons pertinent not only to the statutory questions, might have moved some or all of the jurors to conclude that he should not be assessed the death penalty. Accordingly, he argues that failure of the trial judge to instruct the jurors as requested effectively precluded their giving mitigating effect to this evidence. We agree.

█ The Texas capital sentencing scheme does not invariably operate in such a way as to violate the Eighth Amendment. *See Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988); *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). But, at least whenever a capital defendant produces evidence of his own character, background, or the circumstances surrounding his offense which, according to contemporary social standards, has a tendency to reduce his moral culpability in a way not exclusively related to the deliberateness of his criminal conduct, the provocative behavior of his victim, or the probability of his future dangerousness, the United States Constitution forbids imposition of the death penalty upon him by a sentencer given no means to prescribe, based on such mitigating evidence, a less severe punishment. *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

█ In the instant cause, testimony offered by appellant revealed a troubled and insecure childhood in which his mother was institutionalized for a severe mental illness and his father imprisoned for burglary. Only an infant at the time, appellant suffered greater mental and emotional hard-

ship as a result of these traumatic events than did his older siblings. During the first several years of his life, he and the other children were shuffled among relatives, never living in one place for very long.

After his parents were released from their respective confinements, appellant lived for a time with his mother. She had since divorced his father and remarried, living with her new husband and the children in a shack without running water somewhere in the mountains of Tennessee. Within a few months, appellant's step-father disappeared, leaving his mother pregnant and without food for the two youngest children. Unable to care for her family, appellant's mother spent much of her time in bars, often bringing strange men home at night. During his early formative years, there was no responsible adult figure in appellant's life.

Largely as a result of these circumstances, appellant's own mental and emotional condition was, and remained at the time of trial, abnormal. Doctor William Winslade, a psychoanalyst, testified that after much effort on his part he persuaded appellant to disclose to him that on two occasions appellant's mother had sexually abused appellant as a small child, requiring him to perform oral sex on her. Finally, Dr. Winslade opined that those experiences, even if they were untrue fantasies, provided a substantial explanation for the appellant's subsequent history of violence, and how the contrast of his violent behavior with his positive personality traits were indicative of severe mental illness, depression, and psychotic illusions of the kind experienced by his mother. Dr. Winslade concluded that appellant developed a delusive fear of sexual domination, and that throughout his adult life this fear intermittently erupted into acts of violence, which appellant forced upon women that, in his fantasies, he feared they might force upon him. Invariably his victims were women with whom he was acquainted on a casual basis and, following his sexual assaults upon them, he customarily acted with in-

---

**18.** See footnote number 3, *ante.*

congruous, even bizarre, familiarity, more characteristic of an intimate encounter than a brutal attack.

That he was able to keep these sexual aberrations secret from his family and friends over an extended period of time evinces a personal recognition of his abnormalcy. Virtually all persons with whom he was acquainted, including his teachers, the customers at his natural father's service station, where he worked, his wife and ex-wife, and his siblings, regarded him as stable, sensible, hardworking, polite, and generous. But at times his sexual fantasies became too great to resist, especially when he was under the influence of alcohol or other drugs. At such times, he suffered from a true psychosis in which episodes of violent criminal behavior were typically followed by feelings of intense remorse.

If true, all of these circumstances are widely regarded, according to some contemporary social standards, as redeeming personality traits or factors which tend to ameliorate fault. See *Penry v. Lynaugh*, supra. As such, the sentencer in a capital proceeding must be authorized to mitigate punishment if it finds that a defendant's personal moral culpability was thereby reduced. This is not to say that the jury must assess a penalty less than death for all defendants who offer mitigating evidence at trial. But jurors may not be precluded from doing so by omission from the court's charge of a means to express their will. *Penry v. Lynaugh*, supra.

We hold that absent some functionally equivalent instructive device, that the jury could consider and give effect to the mitigating circumstances, the jury was not afforded the opportunity to express its judgment whether appellant, even if likely to be a continuing threat to society, should receive the death sentence.

Because under current law we have no authority to remand this cause for a new punishment hearing only, the trial court's judgment of conviction and sentence of death are reversed and the cause remanded to the trial court for further proceedings not inconsistent with this opinion.

MILLER and CAMPBELL, JJ., with regard to the requested "mitigation charges" that are contained in footnote 3 of the majority opinion, believe that the one labeled "(Point 17)" is the best of the options that were given the trial judge under the "punishment" facts that went to appellant's "personal culpability." Furthermore, in the treatment of appellant's point of error # 12, they concur in the result only. With these remarks, they join the majority opinion.

WHITE, J., concurs in the result.

McCORMICK, P.J., and BERCHELMANN and STURNS, JJ., dissent.