NO. 07-08-0229-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

NOVEMBER 16, 2009
_____

DAROLD O. SIMMONS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-415,500; HONORABLE CECIL G. PURYEAR, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Darold O. Simmons appeals from his jury conviction of the offense of capital murder and the resulting life sentence without the possibility of parole. Through one point of error, appellant argues the evidence of his commission of the predicate offense of robbery was factually insufficient. Finding the evidence sufficient, we affirm the judgment of the trial court.

Background

Appellant's capital murder[1] indictment alleged that, on or about February 18, 2007, he intentionally caused the death of Ross Mosley by stabbing him, and that appellant was "then and there in the course of committing and attempting to commit the offense of robbery." Appellant plead not guilty.

Between 7:15 and 7:30 on the Sunday morning of February 18, 2007, police were called to a Lubbock address, where the body of the 72-year-old Mosley was found lying face-down in the front yard. He had been stabbed. His wallet was found in his back pocket. His pockets also contained his cell phone, $1.43 in change, and a small "multi-tool" on a key chain. A five-dollar bill was found inside his left jacket pocket. A ball cap and a gin bottle were located next to him.

As he often did, Mosley had participated in a neighborhood poker and gambling session at the house of his friend Charles Kerr during the early morning hours. The game began to break up about 4:00 a.m. Kerr testified that as Mosley prepared to leave, shortly before 6:00 a.m., he asked Kerr to loan him some money because he had lost about seventy-five dollars playing dice. His friend gave him ten one-dollar bills. Another witness also said Kerr gave Mosley ten dollars. Mosley left, walking down the street.

---

[1] *See* Tex. Penal Code Ann. §19.03(a)(2) (Vernon 2003).

2

Appellant was nineteen years old, lived in the neighborhood and was known to Kerr as the grandson of a neighbor. Appellant also frequented Kerr's house. He came by there during the morning hours of February 18, but did not stay long. He left Kerr's about an hour-and-a-half before Mosley.

Just after 8:00 a.m., police arrested appellant for the sexual assault and robbery of a female cab driver in the same neighborhood. When he was arrested for that offense, he had $54 on him, one twenty, three fives and nineteen one-dollar bills. The cab driver reported to officers that she had been robbed of "one $20, three to four five-dollar bills" and "the rest were one-dollar bills." No other money or property was found on appellant.

Police shortly identified appellant as a suspect in Mosley's death. His written statement provided during an interview concerning Mosley's death was entered at trial. In his statements, appellant told of an encounter he had with Mosley that morning, after Mosley left Kerr's house. He said he saw Mosley walking on the street,[2] approached Mosley and asked to borrow five dollars. Mosley appeared not to hear him so appellant asked again. In response, he said, Mosley took a knife out of his pocket and swung it at appellant. Mosley dropped the knife and appellant said he then found the knife and swung it twice at Mosley because he was afraid of him. Mosley turned and ran away. Appellant said he picked up the ten dollars, which Mosley had dropped. According to appellant's

---

[2] Although it does not appear in appellant's written statements to police, an officer testified appellant told him Mosley was counting his money as appellant approached him.

3

statements, he then bought a beer and walked around, upset over Mosley's attack on him, before he encountered the cab driver.[3]

The medical examiner testified Mosley's cause of death was a single stab wound that penetrated his sternum and entered his heart. He said the stabbing blow would have been forceful and most probably came from behind the victim. He further testified Mosley would have fallen immediately to the ground when he sustained the stab wound, and that his blood pressure would have dropped to zero quickly. He said Mosley would not have been capable of "purposeful movement" for more than about twenty seconds after sustaining the wound. The medical examiner found a second knife wound, penetrating the subcutaneous tissue of Mosley's abdomen. The little blood associated with that wound indicated it was sustained when Mosley's blood pressure was very low. Asked to compare his findings with appellant's version of his encounter with Mosley, the medical examiner said the fatal stab wound was not caused by the type of swinging knife motion appellant described. Appellant's statements that Mosley attacked him were disputed also by testimony that Mosley was not known to carry a knife and not known as a violent man.

The murder weapon was never found. DNA evidence showed Mosley's blood on the shirt appellant was wearing when he was arrested.

---

[3] The cab driver said appellant flagged her down as she drove through the neighborhood looking for an address to pick up a fare. Appellant's statements said his sexual encounter with the driver in her cab was consensual, and she gave him money. She testified appellant threatened to kill her, sexually assaulted her and took her money.

4

The defense presented its case through the cross-examination of the State's witnesses and a patrol car DVD recording of events surrounding appellant's encounter with the cab driver. The defense highlighted evidence appellant did not rob Mosley, arguing it was a case of manslaughter, not capital murder.

After hearing the evidence and arguments of counsel, the jury convicted appellant of capital murder as charged in the indictment. Because the State did not seek the death penalty, the trial court automatically assessed appellant's punishment at confinement for life without the possibility of parole. This appeal followed.

## Analysis

On appeal, appellant does not contest the sufficiency of the evidence he murdered Mosley, but challenges the factual sufficiency of the evidence supporting the robbery element of the capital murder offense. That is, he contends the evidence is factually insufficient to show he murdered Mosley while committing or attempting to commit the offense of robbery.

*Standard of Review for Factual Sufficiency*

In capital murder committed during the course of a robbery, the factual sufficiency standard applies to both the charged and underlying offenses. *Russo v. State,* 228 S.W.3d 779, 792 (Tex.App.–Austin 2007, pet. ref'd), *citing Brewer v. State,* 126 S.W.3d 295, 297 (Tex.App.–Beaumont 2004, pet. ref'd). In a factual sufficiency review, we begin with the

assumption that the evidence is legally sufficient, that is, it was such as to permit a rational jury to find guilt beyond a reasonable doubt. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App. 1997), *citing Clewis v. State,* 922 S.W.2d 126, 134 (Tex.Crim.App. 1996). A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia*. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.; Watson v. State*, 204 S.W.3d at 414-15; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we consider all the evidence, in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414. Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, even to a limited degree those concerning the weight and credibility of the evidence, the appellate court must accord them due deference. *Marshall*, 210 S.W.3d at 625; *Johnson*, 23 S.W.3d at 9. When there is a conflict in the evidence, to find it factually insufficient we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417. We must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

*Applicable Law*

Appellant was convicted of capital murder under section 19.03(a)(2) of the Penal Code. Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 2003). As pertinent here, the statute provides a person commits capital murder if he commits murder as defined under Penal Code section 19.02(b)(1) and intentionally commits the murder in the course of committing robbery. Under section 19.02(b)(1), a person commits an offense if he intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1) (Vernon 2003).

A person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex. Penal Code Ann. § 26.02(a)(2) (Vernon 2003). Proof of theft requires an unlawful appropriation of property with intent to deprive its owner of it. Tex. Penal Code Ann. § 31.03 (Vernon 2007).

Intent to steal may be inferred from actions or conduct. *Scott v. State,* 934 S.W.2d 396, 401 (Tex.App.–Dallas 1996, no pet.), *citing Johnson v. State,* 541 S.W.2d 185, 187 (Tex.Crim.App. 1976). There is no requirement that property stolen must be recovered in whole or in part to prove the offense of robbery. *Russo,* 228 S.W.3d at 794 , *citing Chaney v. State,* 474 S.W.2d 711, 712 (Tex.Crim.App. 1972); *Dean v. State,* 154 S.W.2d 459 (Tex.Crim.App. 1941). Case law provides that to prove capital murder committed during

the course of robbery, the State must show, *inter alia,* in addition to the murder, that the defendant possessed the specific intent to obtain or maintain control of the victim's property either before or during the commission of the murder. *Shuffield v. State,* 189 S.W.3d 782, 791 (Tex.Crim.App. 2006); *Herrin v. State,* 125 S.W.3d 436, 441-43 (Tex.Crim.App. 2002); *Conner v. State,* 67 S.W.3d 192, 197-98 (Tex.Crim.App. 2001). The State "must prove a nexus between the murder and the theft, i.e., that the murder occurred in order to facilitate the taking of the property." *Ibanez v. State,* 749 S.W.2d 804, 807 (Tex.Crim.App. 1986). Proof that the robbery was committed as an afterthought and unrelated to the murder is not sufficient. *Herrin,* 125 S.W.3d at 441, *citing Conner,* 67 S.W.3d at 197.

Appellant's factual sufficiency challenge incorporates a contention the State's evidence does not establish the *corpus delicti* of the robbery. A criminal conviction cannot be based on a defendant's extrajudicial confession unless the confession is corroborated by independent evidence tending to establish the *corpus delicti. Weaver v. State,* 265 S.W.3d 523, 532 (Tex.App.–Houston [1st Dist.] 2008, pet. ref'd). Some evidence, independent of the defendant's statements, must show that the crime actually occurred, though the independent evidence need not identify the defendant as the culprit. *Salazar v. State,* 86 S.W.3d 640, 644-45 (Tex.Crim.App. 2002). The corroborating evidence also need not prove the underlying offense conclusively; all that is required is that some evidence makes the commission of the offense more probable than it would be without the evidence. *Cardenas v. State,* 30 S.W.3d 384, 390 (Tex.Crim.App. 2000); *Gribble v. State,*

8

808 S.W.2d 65, 72 (Tex.Crim.App. 1990). The standard also has been stated as requiring that the extrajudicial confession be corroborated "by other evidence tending to show that a crime was committed." *Gribble*, 808 S.W.2d at 70. In a capital murder case like this, the *corpus delicti* of the offense consists of the *corpus delicti* of the murder and of the accompanying offense. *Cardenas,* 30 S.W.3d at 390; *Gribble,* 808 S.W.2d at 71.

*Application*

Appellant's specific arguments are that the evidence is factually insufficient to show a robbery occurred at all, and that, if a robbery occurred, the evidence is similarly insufficient to show he formed, before or during the stabbing, the requisite intent to rob Mosley.

Appellant's *corpus delicti* contention here essentially is that no evidence but his extrajudicial statements shows an assault on Mosley was committed "in the course of committing theft . . . and with intent to obtain or maintain control of the property." *See* Tex. Penal Code Ann. § 26.02(a)(2) (Vernon 2003) (definition of robbery). Said another way, appellant contends there is no evidence outside his extrajudicial statements that any nexus existed between Mosley's murder and a theft, that is, "that the murder occurred in order to facilitate the taking of the property." *Ibanez,* 749 S.W.2d at 807. We must disagree. Keeping in mind that the evidence corroborating the *corpus delicti* "need not be great," *Gribble*, 808 S.W.2d at 72, the evidence here that Mosley had ten dollars with him when

9

he walked away from Kerr's house and did not have it when his body was found suffices.[4] That evidence tends to show Mosley was robbed, particularly when coupled with the circumstances of his nearly sudden death.

Reviewing the factual sufficiency of the evidence that a robbery occurred, we consider the entire record, including appellant's statements confirming that Mosley had the ten dollars when appellant approached him, that appellant unsuccessfully asked to borrow money and that appellant left with the money after his confrontation with Mosley. To this we add the testimony that appellant, very shortly after his encounter with Mosley, took all the cab driver's cash after threatening to kill her. We also agree with the State that the medical examiner's testimony that Mosley was most likely killed from behind suggests the murder was a means to facilitate the taking of Mosley's money, particularly in the absence of evidence suggesting another motive for such an attack.

As evidence showing the murder did not occur in the course of a theft, appellant points out Mosley had a five-dollar bill, some change and a cell phone that were not taken, and that his wallet was undisturbed in his back pocket. Thus, appellant notes, if Mosley

---

[4] Appellant suggests the jury had reasons to doubt the testimony of Kerr and the other witness that Kerr gave Mosley the ten dollars. For our purpose in this analysis, we leave evaluation of the credibility of the witnesses to the jury. *Marshall*, 210 S.W.3d at 625. He also suggests the length of time that may have passed between Mosley's leaving Kerr's house and his death would have permitted him to spend the ten dollars elsewhere. But such a possibility does not deprive the evidence of its probative value *tending to show* a robbery occurred. *Gribble*, 808 S.W.2d at 70. Nor, considered in our factual sufficiency analysis, does it so weaken the State's case that the jury's verdict seems clearly wrong and manifestly unjust. *Watson*, 204 S.W.3d at 417.

did not have the ten dollars Kerr gave him when he was attacked, there is no evidence anything was taken from him. With respect to the ten dollars, appellant points to the fact the money found in his possession matches, even to the number of the bills and their denominations, the cash the cab driver said he took from her. Appellant argues this circumstance strongly suggests he did not take ten dollars from Mosley.

With respect to the other items on Mosley's body, the State responds that the body was lying face-down, making it more difficult for items to be taken from his front pockets. The State also notes Mosley was killed in the front yard of a residence where, even early on a Sunday morning, his killer would not have had the luxury of time to search his pockets as he would have in a more secluded location. The State also responds that appellant's own statement recites he ended up with the ten dollars Mosley had and recites that he bought beer after his encounter with Mosley and before he saw the cab driver.[5]

Appellant asserts *Brewer,* 126 S.W.3d 295, supports his position the robbery evidence is factually insufficient. There, the court affirmed Brewer's murder conviction but found the evidence the murder was committed in the course of a robbery legally insufficient despite evidence Brewer had just given the victim several hundred dollars for drugs, Brewer doubted the victim had sold him the agreed-upon amount of drugs and was angry, and the victim's wallet, containing no money, was found with his body. *Id*. at 302-03. The court found no physical or testimonial direct evidence that a theft or robbery of the victim

---

[5] Appellant's statement he bought beer is supported by the testimony of another witness that appellant had a can of Budweiser when he entered the cab.

took place, much less direct evidence implicating Brewer in such an offense. It also found no evidence, even circumstantial, showing Brewer formed the intent to commit a robbery before or during the murder. *Id*. at 303. By contrast, here, our analysis must include appellant's own statements providing direct evidence Mosley had the ten dollars when their encounter began and appellant had the ten dollars after their encounter. Granted, the evidence may not account for the whereabouts of the ten dollars, except for appellant's statement he bought beer, but recovery of the stolen property is not an essential part of the proof of robbery. *Russo,* 228 S.W.3d at 794.

Appellant also relies on *Herrin,* 125 S.W.3d 436, another case in which the evidence the murder was committed in the course of robbery was found legally insufficient. *Id*. at 442. *Herrin* also is to be distinguished from the case at bar. The court there found no evidence that Herrin knew the victim had any money on his person, nor evidence linking Herrin with the victim's wallet. The court also rejected the State's argument that an intent to steal the victim's money could reasonably be inferred from evidence the victim owed Herrin's father money. In so doing, the court noted Herrin had money in his bank account, suggesting he did not need money. *Id*. at 441-42.

Appellant's statement says he approached Mosley asking to borrow money. There was testimony appellant had no job. The cab driver who testified appellant took her money that morning also said appellant told her he needed money. Appellant was in the cab when she said she had made $160 driving the cab the night before, and saw her fare pay her $25. Unlike *Herrin*, the jury here heard evidence that appellant knew Mosley had

12

money, desired money from Mosley, left with ten dollars Mosley had been carrying, needed money, and shortly thereafter robbed another person.

Having reviewed the entire record in a neutral light, we conclude the evidence establishing both that appellant's murder of Mosley was in the course of a robbery, and that appellant formed the intent to commit a robbery at the time of the murder is factually sufficient. The evidence favoring the verdict is neither so weak nor contradicted by contrary evidence such that the verdict is contrary to the great weight and preponderance of all the evidence or manifestly unjust. We overrule appellant's point of error, and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.