Rodriguez v. SOT
















NUMBER 13-02-00322-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

JESSE JOE RODRIGUEZ,                                                           Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.
                                                                                                                       

On appeal from the 36th District Court of Aransas County, Texas.
                                                                                                                       

MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Hinojosa and Castillo
Memorandum Opinion by Justice Hinojosa

          A jury found appellant, Jesse Joe Rodriguez, guilty of the offense of capital murder,
and the trial court assessed his punishment at life imprisonment. By seven points of error,
appellant contends: (1) the trial court improperly denied his request for an instructed
verdict; (2) the evidence is legally and factually insufficient to support his conviction for
capital murder; and (3) the trial court improperly denied his request that the jury charge
include an instruction regarding independent evidence to corroborate his confessions. We
affirm.
A. Factual Background
          At 7:30 a.m. on May 9, 2001, James Little and James Park were fishing near the
Degussa Carbon Black Plant in Aransas County and noticed a car in the water near the
Degussa Dock. The men called the police.
          One hour later, Howard Scanlan was performing a routine inspection of the
unloading dock when he noticed police officers removing a car from the water. As he
approached the east side of the dock, he noticed a naked body floating face down in the
water. He informed the police officers removing the car. He said that at his last inspection,
the day before at 1:30 p.m., there had been no body in the water. The location where the
body and car were found is about 500 yards off Highway 35. This location is not visible
from Highway 35.
          Inspector Matt Baird testified that there were two crime scenes in this case. The first
crime scene was on a shoreline a short distance from the dock area. At this crime scene,
the officers recovered two halves of a torn, white bra, two white socks, one white tennis
shoe, and grey men’s boxer shorts with motorcycle designs. The bra was ripped apart
between the two cups and the hooks in the back had been straightened.
          The second crime scene was approximately 125 yards west of the shoreline in a
laguna-type area. At this crime scene, the officers recovered one white tennis shoe (the
mate of the tennis shoe recovered at the first crime scene), some hair strands, a life
insurance policy belonging to the victim with droplets of blood on the envelope, shoe prints,
tire tracks, and droplets of blood on the sand.
          Medical Examiner Lloyd White testified that the victim’s cause of death was
saltwater drowning. Criminalist Lisa Baylor testified that DNA analysis of the vaginal and
anal swabs taken from the victim revealed that the appellant could not be excluded as a
contributor to the semen from vaginal and anal swabs. The blood on the life insurance
policy envelope was determined to belong to the victim.
          Tamala Dale Weeks testified that the victim had visited her at her residence on May
8, 2001. Sometime after 6:00 p.m., appellant arrived at Weeks’ residence to visit Roland
Weeks, who was also there that evening. The victim did not talk to appellant at all that
evening. At approximately 11:30 p.m., the victim left the Weeks’ residence because she
had to go to work on a mail route with her cousin at 4:00 a.m. the next morning. Roland
Weeks told appellant that the victim might be able to give appellant a ride home. After the
victim had shut the door behind her, appellant said out loud “I wonder if she’ll give me a
ride” and then appellant also left the Weeks’ residence, following the victim. Neither the
victim nor appellant returned that night to the Weeks’ residence. 
          Appellant made two written statements and one video statement which were
admitted into evidence. Appellant said he asked the victim to give him a ride to his room
at the Cedar Lodge Motel in Aransas Pass. During the car ride, appellant took control of
the victim’s car and held her forcefully. The victim panicked and tried to get out of the car. 
She asked appellant to stop driving, but appellant told her that he would wreck the car if
she did not allow him to drive. He drove to a location near the tracks at Carbon Black.
          Next, appellant ordered the victim to move to the back seat of the car and ordered
her to remove her clothing. The victim complied. Appellant grabbed the front of the
victim’s bra and tore it off her body. He then sexually assaulted the victim vaginally and
anally. The victim screamed for help and screamed for appellant to get off her, but
appellant continued to sexually assault her. Appellant had an orgasm during the sexual
assault. The victim pleaded for appellant to stop, but appellant refused to do so. The
victim then threatened to report the rape, and appellant decided to kill her to prevent her
from doing so. 
          Appellant attempted to asphyxiate the victim by placing her face against the back
seat and putting his knee against her back, with one of his hands on top of her head and
the other hand pushing against the ceiling of the car so as to put great pressure on her.
This attempt failed. Appellant next wanted to get rid of the car and drown the victim. First,
appellant tried to sink the car in the water, but the car got stuck. 
          Appellant then drove to the second location, and once again tried to sink the car,
but the car did not “drown.” Appellant entered the water and pulled the victim out of the
car. In the water, appellant again sexually assaulted the victim vaginally and anally. The
victim fought appellant, but was unable to fend him off. Appellant then held the victim’s
head under water with his hand around her neck and his knee on her back. After verifying
that the victim was not breathing, appellant collected his clothes and walked back to his
motel. Appellant left his boxer shorts and sock at the crime scene. He arrived at his motel
room at approximately 1:00 a.m.
B. Sufficiency of the Evidence
          A person commits capital murder if the person commits murder as defined under
§19.02(b)(1) of the penal code and “the person intentionally commits the murder in the
course of committing or attempting to commit kidnapping . . . or retaliation.” See Tex. Pen.
Code Ann. §19.03(a)(2) (Vernon Supp. 2004).
          In this appeal, appellant does not challenge the sufficiency of the evidence of the
offense of murder. Appellant contests the sufficiency of the evidence only of the underlying
offenses of kidnapping and retaliation. Therefore, we will address the sufficiency of the
evidence of these two underlying offenses.
1. Standard of Review
          A challenge to the trial judge’s ruling on a motion for an instructed verdict is in reality
a challenge to the legal sufficiency of the evidence. Williams v. State, 937 S.W.2d 479,
482 (Tex. Crim. App. 1996); Monterrubio v. State, 941 S.W.2d 322, 326 (Tex. App.–Corpus
Christi 1997, no pet.). If the evidence is sufficient to sustain the conviction, then the trial
court did not err in overruling appellant’s motion for instructed verdict. Madden v. State,
799 S.W.2d 683, 686 (Tex. Crim. App. 1990).
          In a legal sufficiency review, we must examine the evidence presented in the light
most favorable to the verdict and determine whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979);Young v. State, 14 S.W.3d 748, 753 (Tex. Crim. App.
2000). In making this determination, the reviewing court considers all the evidence
admitted that will sustain the conviction, including improperly admitted evidence. Conner
v. State, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Questions concerning the credibility
of the witnesses and the weight to be given their testimony are to be resolved by the trier
of fact. Mosley v. State, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Evidence is not
rendered insufficient when conflicting evidence is introduced. Matchett v. State, 941
S.W.2d 922, 936 (Tex. Crim. App. 1996). The reviewing court must assume that the fact
finder resolved conflicts, including conflicting inferences, in favor of the verdict, and must
defer to that resolution. Id. The fact finder may use common sense and apply common
knowledge, observation, and experience gained in ordinary affairs when giving effect to the
inferences that may be reasonably drawn from the evidence. Booker v. State, 929 S.W.2d
57, 60 (Tex. App.–Beaumont, 1996, pet. ref’d).
          In a factual sufficiency review, we must determine "whether a neutral review of all
the evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof." Johnson v.
State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Evidence is factually insufficient if: (1) it
is so weak as to be clearly wrong and manifestly unjust; or (2) the adverse finding is
against the great weight and preponderance of the available evidence. Id. "[D]ue
deference must be accorded the fact finder's determinations, particularly those
determinations concerning the weight and credibility of the evidence." Id. at 9.
          In conducting our review, we measure the sufficiency of the evidence by the
elements of the offense as defined by a hypothetically correct jury charge for the case. 
See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). This hypothetically
correct jury charge would set out the law, be authorized by the indictment, not necessarily
increase the State's burden of proof or necessarily restrict the State's theories of liability,
and adequately describe the particular offense for which the defendant was tried. Id.; see
Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000) ("We believe the 'law' as
'authorized by the indictment' must be the statutory elements of the offense . . . as modified
by the charging instrument."). 
2. Retaliation
          By his first and second points of error, appellant contends the trial court erred in
denying appellant’s request for an instructed verdict and that the evidence is legally and
factually insufficient to show that he caused the death of the victim while in the course of
committing or attempting to commit the offense of retaliation. 
          A person commits the offense of retaliation if he intentionally or knowingly harms
or threatens to harm another by an unlawful act in retaliation for or on account of the
service or status of another as a person who has reported or who the actor knows intends
to report the occurrence of a crime. See Tex. Pen. Code Ann. § 36.06(a)(1)(B) (Vernon
Supp. 2004). The indictment alleged that appellant caused the death of the victim by
holding her head under water and drowning her, while in the course of committing or
attempting to commit retaliation against her. 
a. Legal Sufficiency
          Appellant said that after the first sexual assault in the back seat of the car, the victim
threatened to report the rape. “[S]he was yelling she was going to file rape on me . . . she
was going to get me for rape.” The victim’s threat made appellant angry and he decided
to kill her so that she could not file a rape charge against him.
          We conclude that any rational trier of fact could have found that appellant’s
confession, combined with the physical evidence of the drowned, sexually-assaulted body
of the victim, establishes the offense of retaliation beyond a reasonable doubt. 
Accordingly, we hold the evidence is legally sufficient to support the jury’s finding that
appellant caused the victim’s death while in the course of committing or attempting to
commit the offense of retaliation.
b. Factual Sufficiency
          Appellant complains that the State’s only evidence of retaliation was his extrajudicial
confession. Appellant contends the State’s evidence of the drowned, sexually-assaulted
body of the victim is not sufficient corroboration. Appellant argues that Hartfield v. State
holds that the only type of corroboration sufficient for retaliation is criminal charges against
the perpetrator and public death threats. Hartfield v. State, 28 S.W.3d 69 (Tex.
App.–Texarkana 2000, pet. ref’d).
          In Hartfield, the defendant’s wife filed sexual assault charges against him and
testified against him at trial. Id. at 71. Hartfield publicly made death threats against his
wife and said he would kill her if he got out of jail. Id. Once released from jail, Hartfield
strangled his wife. Id. He later gave a written statement admitting the strangling. Id. 
Hartfield was found guilty of capital murder, with the underlying offense of retaliation, and
the appellate court affirmed the conviction. Id. at 71-72.
          Appellant argues that the only type of evidence which suffices as independent
corroboration of retaliation is evidence similar to that shown in Hartfield, namely criminal
charges against the perpetrator and public death threats. However, neither the court in
Hartfield nor the statute require criminal charges or death threats.
          Here, appellant confessed that he sexually assaulted the victim, she threatened to
file rape charges against him, and he drowned her to prevent her from doing so. Appellant
presented no evidence at trial regarding the offense of retaliation. The evidence showed
that the victim was sexually assaulted and drowned.
          After reviewing all of the evidence, we conclude that the evidence is not so weak as
to be clearly wrong and manifestly unjust and the verdict is not against the great weight of
the evidence. Accordingly, we hold the evidence is factually sufficient to support the jury’s
finding that appellant caused the victim’s death while in the course of committing or
attempting to commit the offense of retaliation. Appellant’s first and second points of error
are overruled.
3. Kidnapping
          By his fifth and sixth points of error, appellant contends the evidence is legally and
factually insufficient to show that he abducted the victim with the intent to prevent her
liberation by secreting or holding her in a place where it was not likely that she would be
found. The indictment alleged that appellant intentionally caused the victim’s death by
holding her head under water and drowning her, while he was in the course of committing
or attempting to commit the offense of kidnapping.
          A person commits the offense of kidnapping if the person intentionally or knowingly
abducts another person. See Tex. Pen. Code Ann. § 20.03(a) (Vernon 2003). The term
“abduct” means to restrain a person with the intent to prevent his liberation by secreting or
holding him in a place where he is not likely to be found or using or threatening to use
deadly force. See Tex. Pen. Code Ann. § 20.01(2) (Vernon 2003). The term “restrain”
means to restrict a person’s movements without consent,


 so as to interfere substantially
with the person’s liberty, by moving the person from one place to another or by confining
the person. See Tex. Pen. Code Ann. § 20.01(1) (Vernon 2003).
a. Legal Sufficiency
          The evidence shows that appellant restricted the victim’s movements without her
consent and interfered with her liberty. Tamala Weeks and the victim’s mother both
testified that the victim planned on going on a mail route with her cousin at 4:00 a.m. the
next morning. Appellant forcefully held the victim against her will in the car by grabbing her
so that she could not move. The victim “freaked out” and tried to get out of the car. 
Appellant forcefully took control of the car so that he could drive it. When the victim
attempted to prevent appellant from taking control of her car, appellant threatened to wreck
the car if she continued to resist. Appellant also moved the victim from one place to
another.
          The offense of kidnapping does not require that the kidnapper restrain the victim for
any particular period of time, nor does it require that the victim be moved any particular
distance. See Santallen v. State, 939 S.W.2d 155, 163 (Tex. Crim. App. 1997); Brimage
v. State, 918 S.W.2d 466, 475 (Tex. Crim. App. 1994). Here, appellant moved the victim
from Tamala Weeks’ residence to the Degussa Dock. The victim was last seen alive
leaving Tamala Week’s residence to go home. The victim was later found dead at the
Degussa Dock. The State also proved the elements of abduction. Appellant held the
victim in a place where she was not likely to be found.
          We conclude that any rational trier of fact could have found that appellant kidnapped
the victim. Accordingly, we hold the evidence is legally sufficient to support the jury’s
finding that appellant caused the victim’s death while in the course of committing or
attempting to commit the offense of kidnapping.
b. Factual Sufficiency 
          Appellant contends that the area of the Degussa Dock is not a secluded location. 
Appellant asserts that the Degussa Dock is 4.5 miles from the city limits of Aransas Pass
and 1.6 miles from the Palm Harbor subdivision. The State’s evidence, however, showed
that the Degussa Dock is 500 yards from Highway 35 and is not visible from Highway 35.
          After reviewing all of the evidence, we conclude that the evidence is not so weak as
to be clearly wrong and manifestly unjust and the verdict is not against the great weight of
the evidence. Accordingly, we hold the evidence is factually sufficient to support the jury’s
finding that appellant caused the victim’s death while in the course of committing or
attempting to commit the offense of kidnapping. Appellant’s fifth and sixth points of error
are overruled.
C. Deadly Weapon
          By his third and fourth points of error, appellant contends the evidence is legally and
factually insufficient to affirm his conviction for using or attempting to use a deadly weapon
while in the course of committing kidnapping.
          The indictment, however, did not charge appellant with the use or attempted use of
a deadly weapon while in the course of committing kidnapping, and the trial court’s
judgment does not reflect that appellant used or attempted to use a deadly weapon in the
course of committing kidnapping. Therefore, appellant’s third and fourth points of error are
overruled.
D. Jury Instruction on Corroboration
          In his seventh point of error, appellant contends the trial court erred in denying his
request that the jury charge include an instruction regarding independent evidence to
corroborate his confessions.
          Texas has long recognized the rule that a criminal defendant's conviction may not
be based solely on his extrajudicial confession, and if such confession is obtained, there
must be some independent evidence of the corpus delicti of the crime. Chavero v. State,
36 S.W.3d 688, 696 (Tex. App.–Corpus Christi 2001, no pet.). The rule does not require
that the independent evidence fully prove each element of the corpus delicti, only that it
tend to prove the corpus delicti. Fisher v. State, 851 S.W.2d 298, 302-03 (Tex. Crim. App.
1993). Nor does the rule require that the evidence be sufficient by itself to prove the
offense. Chambers v. State, 866 S.W.2d 9, 15 (Tex. Crim. App. 1993). The quantum of
independent evidence necessary to corroborate the corpus delicti in a criminal prosecution
need not be great. Gribble v. State, 808 S.W.2d 65, 71-72 (Tex. Crim. App. 1990). So long
as there is some evidence which renders the corpus delicti more probable than it would be
without the evidence, the essential purposes of the rule have been served. Id. at 72.
          The corpus delicti in a murder prosecution consists of two elements: (1) the body
of the victim must be found and identified, and (2) it must be shown that the victim’s death
was caused by the criminal act of another. Self v. State, 513 S.W.2d 832, 834-35 (Tex.
Crim. App. 1974). A trial court does not need to give a jury instruction requiring
independent corroboration of the perpetrator’s confession when the evidence sufficiently
establishes the corpus delicti. See Honea v. State, 585 S.W.2d 681, 684 (Tex. Crim. App.
1979); Valore v. State, 545 S.W.2d 477, 479 (Tex. Crim. App. 1977); Aranda v. State, 506
S.W.2d 221, 226 (Tex. Crim. App. 1974); Engledow v. State, 407 S.W.2d 789, 791 (Tex.
Crim. App. 1966); Smith v. State, 246 S.W.2d 187, 188 (Tex. Crim. App. 1952).
          The State produced evidence that the victim’s sexually-assaulted body was found
near the Degussa Dock; the body was conclusively identified; and the medical examiner
found that she had died from saltwater drowning. The State also produced the following
evidence: (1) Tamala Weeks testified that she heard appellant wonder aloud if the victim
would give him a ride home; (2) Roland Weeks testified that appellant told him that he
needed a ride home; (3) Roland Weeks testified he suggested that appellant ask the victim
for a ride home; (4) Tamala and Roland Weeks testified that appellant followed the victim
to her car and neither appellant nor the victim returned to the Weeks’ home; (5) Tamala
Weeks and the victim’s mother both testified that the victim had told them she had to wake
up early the next morning to go on a 4:00 a.m. mail route with her cousin; and (6) the
victim’s dead body and car were found in the secluded location of the Degussa Dock. 
          Because the evidence produced by the State rendered the corpus delicti of murder
more probable than it would be without the evidence, we hold the trial court did not err in
refusing to instruct the jury on independent corroboration of appellant’s confessions. 
Appellant’s seventh point of error is overruled.
          The judgment of the trial court is affirmed.
 
                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Do not publish. See Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and filed this
the 10th day of November, 2004.