Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion issued November 3,
2005














 

     

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



No. 01-04-00868-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



RICHARD TRENT SCHNEIDER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 925450

 

 

 








MEMORANDUM OPINION

          Appellant
Richard Trent Schneider pleaded not guilty to capital murder, a jury convicted
him, and the trial court assessed punishment at life imprisonment.  Schneider contends that (1) the evidence is
legally and factually insufficient to support his conviction; (2) the trial
court erred in admitting a photograph of the victim with his young son; and (3)
the State’s closing argument was improper. 
We hold that the evidence is legally and factually sufficient to support
the conviction and that Schneider failed to preserve error with respect to the
admissibility of the photograph and the propriety of the State’s closing
argument.  We therefore affirm.

Facts

          The
State charged Schneider with the robbery and murder of James Allen Turner.  Turner lived with his girlfriend, Roxanne
Ochoa, in a house at 5431 Firefly, Harris County, Texas.  Several others also lived at the house,
including Alecia Mahoney.  Turner did not
have a job and supported himself by selling cocaine and marijuana.  Turner and Ochoa used to put their cocaine in
a small zippered black bag.

          The
owner of the house, Sammy, wanted to evict Turner and Ochoa because of their
drug activities.  Sammy sent Michael
Whitmire, Jason Ray, and Schneider to do the job.  The three men decided that since Sammy was
not going to pay them for their services, they would get what they could from
Turner in the way of drugs and money.

          When
the three men arrived at the house on the evening of September 22, 2002, Turner
was not there.  The men sat around
smoking and eating cereal, waiting for Turner to arrive.  After approximately thirty minutes, Alecia
left the house and used a pay phone to call Turner to tell him the three men
were waiting for him.  She returned and
stated that Turner would arrive shortly, but the three men left at that point,
saying they would be back later.

          Turner
returned to the house a short time later and told Ochoa that he had encountered
the three men in the street.  At that
point, Turner’s dog began barking and the three men entered the house.  Ray grabbed Ochoa and held a knife against
the side of her face.  Someone else
pointed a gun straight at Turner,[1]
the gun discharged, and Turner fell to the ground.  The three men then ran to the door, struggled
to open it, and fled the scene.

          Ochoa
ran to Turner and saw he had a bullet wound to the head and no pulse.  Alecia ran next door to Sammy’s house and
called the police.  Sergeant Michael Bozeman
and Officer Mike Walker, Houston Police Department, Homicide Division, arrived
at the scene, conducted an investigation, and developed the names of two
suspects: Michael Whitmire and Jason Leon Ray. 
Sergeant Bozeman subsequently interviewed Whitmire and Ray, who gave him
the name of a third suspect: Richard Trent Schneider.

          The
police arrested Schneider, who voluntarily gave a videotaped statement to
Sergeant Bozeman.  Schneider stated that
Sammy wanted Turner out of the house because he was involved in drugs.  Whitmire was the most motivated to get Turner
out of the house, and he, Ray, and Schneider decided to do the job and get what
they could from Turner in the way of drugs and money since Sammy was not going to
pay them.  The three men went to the
house, but just sat around eating cereal because Turner was not there.  The men got nervous when Alecia left to call
Turner and decided to leave.

          The
men bumped into Turner in the street and Whitmire insisted on returning to the
house.  Schneider was scared and tried to
give the gun back to Whitmire since he was the one so intent on returning to
the house, but Whitmire refused to take the gun.  The men then returned to the house and saw
Turner coming out of the bedroom. 
Schneider pointed the gun at Turner, thinking they could just get a bag
Turner had around his neck and get out.

          Schneider
pulled the hammer back on the gun, thinking the sound of the cocking mechanism
would scare Turner enough so that “everything would just stop.”  The gun then discharged and Turner fell to
the ground.  Whitmire started screaming,
“Get the bag.”  At that point, the three
men ran out of the house.  According to
Schneider, the shooting was an accident. 
Schneider told Sergeant Bozeman that the .38 Special revolver he used in
the shooting was still “in between the split seats in the front” of the car in
which he had been arrested.

          Sergeant
Bozeman called Officer Earnest Aguilera, Houston Police Department, Crime Scene
Unit, and told him to go to Northside Storage at 36 Tidwell to recover a gun.  Officer Aguilera recovered a .38 Special
revolver, which was wedged in between the front seat and the hump of the car,
from the white Nissan Altima in which Schneider had been arrested.  The revolver was in a holster and loaded with
four live rounds.

          A
firearms examiner testified that the bullet recovered from Turner’s body was
fired from the .38 Special revolver found in the white Nissan Altima.  The revolver has a 4 1/4 to 4 1/2 pound pull
in single action mode, and a 12 3/4 pound pull in double action mode, and
cannot be fired without putting a finger on the trigger.

          The
medical examiner testified that Turner was shot between the eyes, on the left
side of the nasal bridge, and died as a result of a penetrating gunshot wound
of the head.

Analysis

Legal Sufficiency

          Schneider
contends that the evidence is legally insufficient to support his capital
murder conviction because there is no evidence, other than his confession, that
he intended to commit a robbery.  Thus,
Schneider asserts, the State failed to prove the corpus delicti for the
underlying offense of robbery.[2]

          In
reviewing a legal insufficiency claim, we view the evidence in the light most
favorable to the verdict and decide whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979).

          A
person commits capital murder when he commits murder as defined under Texas
Penal Code Section 19.02(b)(1) and intentionally commits the murder in the
course of committing or attempting to commit robbery.  Tex.
Pen. Code Ann. § 19.03(a)(2) (Vernon 2003).  A person commits murder under Texas Penal
Code Section 19.02(b)(1) when he intentionally or knowingly causes the death of
an individual.  Id. §
19.02(b)(1).  A person commits robbery
when he, in the course of committing theft as defined in Chapter 31 and with
intent to obtain or maintain control of the property, intentionally, knowingly,
or recklessly causes bodily injury to another. 
Id. § 29.02(a)(1).  A
person commits theft as defined in Chapter 31 when he unlawfully appropriates
property with intent to deprive the owner of the property.  Id. § 31.03(a).

          The
corpus delicti rule, which is a rule of evidentiary sufficiency,
provides that an extrajudicial confession of wrongdoing, standing alone, is not
enough to support a conviction; other evidence must exist to show that a crime
has in fact been committed.[3]  Rocha v. State, 16 S.W.3d 1, 4 (Tex.
Crim. App. 2000).  This other evidence,
known as the “corpus delicti,” need not be sufficient by itself to prove
the offense: “all that is required is that there be some evidence which renders
the commission of the offense more probable than it would be without the
evidence.”  Id. (quoting Chambers
v. State, 866 S.W.2d 9, 15-16 (Tex. Crim. App. 1993)).  In addition, the independent evidence need
not connect the defendant to the crime—it need only show that a crime was
committed.  Emery v. State, 881
S.W.2d 702, 705 (Tex. Crim. App. 1994).  In
a capital murder case, the corpus delicti requirement extends to both
the murder and the underlying offense (here, robbery).  Rocha, 16 S.W.3d at 4-5; Hammond v.
State, 942 S.W.2d 703, 706 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

          Schneider
points out that the only witness to the offense, Ochoa, testified that she
never heard the three perpetrators say anything to the effect of “[g]ive me the
black bag or I’m robbing you or anything like that[.]”  Nor did she ever see the three men try to
steal anything.  According to Schneider,
the only evidence that the three men even thought about committing a robbery
comes from his own confession, which is insufficient under the corpus
delicti rule.

          We
disagree.  Ochoa testified that she and Turner
kept their cocaine in a small black bag that was missing after the murder.  This independent evidence corroborates
Schneider’s statement that he and the other two men intended to take drugs from
Turner, and that Schneider pointed the gun at Turner in an effort to get the black
bag he had around his neck.  While the
corroborating evidence would be even stronger if, for instance, the police had
found the black bag in Schneider’s possession after the murder,[4]

the quantum of independent evidence necessary to
corroborate the corpus delicti in a criminal prosecution relying upon
the extrajudicial confession of an accused need not be great.  So long as there is some evidence which
renders the corpus delicti more probable than it would be without the
evidence, we believe that the essential purposes of the rule have been served.

 

Gribble v. State, 808 S.W.2d 65, 71–72 (Tex. Crim.
App. 1990) (citation and footnote omitted) (holding that, in capital murder
case involving corpus delicti of kidnapping, “[w]hile there is little,
apart from appellant’s confession, to suggest that . . . the deceased[] was moved
from her residence without her consent and while still alive to the place where
her body was ultimately discovered, we are not persuaded that the record is
utterly devoid of evidence to this effect[,]” and thus, “any rational trier
of fact could have found that there was some evidence that the corpus delicti
of kidnapping was sufficiently corroborated”).

In addition, there are other indicia
of aggravated robbery in this case. 
Ochoa saw Schneider and the other two men enter the house carrying
deadly weapons and saw the “guy with the gun . . . point[] it straight at Jay
[Turner].”  After the shooting, she
observed the three men “r[u]n to the door[,]” struggle to open it, and then “r[u]n
out” once it opened.  Ochoa also
testified that Turner supported himself by selling drugs since he did not have
a job, and that she believed the men came to the house intending to buy cocaine
from Turner.  Viewing the evidence in a
light most favorable to the verdict, a rational trier of fact could have found
that based on these facts, and because Ochoa testified the black bag was
missing after the murder, there was some evidence that the corpus delicti
of robbery was adequately corroborated so as to find beyond a reasonable doubt
that Schneider committed the murder in the course of committing a robbery.  See id. at 73; see also Purser
v. State, 902 S.W.2d 641, 647–48 (Tex. App.—El Paso 1995, pet. ref’d) (in
capital murder case, holding that, although victim’s employer could not state
with certainty that anything had been taken from his desk, corpus delicti
of robbery was established where someone had rummaged through the desk, and
bloody footprint behind desk led to inference that perpetrator stepped behind
desk to look through desk drawers).  Accordingly,
we overrule Schneider’s first issue.

Factual Sufficiency

          Schneider
contends that the evidence is factually insufficient to support his capital
murder conviction because his confession clarifies that he never intended to
hurt anyone when he went to Turner’s house. 
Schneider points out that Ochoa testified she never heard the shooter
make any demands before firing the gun; thus, the evidence “strongly suggests
that the gun went off accidentally.” 
According to Schneider, this inference is buttressed by the fact that he
wasn’t angry at Turner (indeed, he didn’t even know Turner), and he willingly
gave a statement to the police and directed them to the gun.

          In
a factual sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the
verdict is clearly wrong and manifestly unjust, or the contrary evidence is so
strong that the standard of proof beyond a reasonable doubt could not have been
met.  Zuniga v. State, 144 S.W.3d
477, 483 (Tex. Crim. App. 2004). 
Although our analysis considers all the evidence presented at trial, the
trier of fact is the exclusive judge of the facts, the credibility of the
witnesses, and the weight to be given to their testimony.  Sharp v. State, 707 S.W.2d 611, 614
(Tex. Crim. App. 1986).  We may not
substitute our own judgment for that of the fact finder.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000).

          In
a capital murder case, the jury may infer intent to kill from the use of a
deadly weapon unless it would be unreasonable to infer that death or serious
bodily injury could result from the use of the weapon.  Jones v. State, 944 S.W.2d 642, 647
(Tex. Crim. App. 1996).  Ochoa testified
that the “guy with the gun” had it in his right hand and was “pointing it
straight at Jay [Turner].”  The next
thing she knew “the gun went off” and the face of the shooter “wasn’t
shocked.  It was kind of like -- it was
kind of like a laugh, like a grin.  You
know, how like when a kid does something wrong and they laugh about it.  Like it was -- like it didn’t bother him at
all, like it was nothing.”  The medical
examiner testified that the bullet entered Turner’s “nose on the left side of
the bridge between the eyes” and that the cause of death was a “[p]enetrating
gunshot wound of the head.”  The .38
Special revolver Schneider told the police he used in the shooting was found
wedged between the front seats of the vehicle in which he was arrested.

While Schneider claims that the evidence
shows the shooting was unintentional and the only reason he pulled the hammer
back on the gun was because he thought the sound of the cocking mechanism would
scare Turner enough so that “everything would just stop,” firearms examiner
Stein testified that the .38 Special revolver could not be fired without
putting a finger on the trigger because of the revolver’s safety mechanism.  Stein also testified that the revolver has a 4
1/4 to 4 1/2 pound trigger pull in single action mode and a 12 3/4 pound trigger
pull in double action mode, meaning “I can hang a bag of sugar, which is sold
at four pounds right now . . . from there and [the] firearm would still not
fire.”  The jury could have found that had
Schneider really intended to use the revolver merely to scare Turner, as he
stated in his confession, he could have removed the bullets.  Mouton v. State, 923 S.W.2d 219, 223
(Tex. App.—Houston [14th Dist.] 1996, no pet.).

          Ochoa
also testified that after the shooting, the three men “ran to the door[,]”
struggled to open it, and then “ran out” once it opened.  Evidence of flight may evince a consciousness
of guilt.  Bigby v. State, 892
S.W.2d 864, 883 (Tex. Crim. App. 1994); Thompson v. State, 691 S.W.2d
627, 630 (Tex. Crim. App. 1984) (holding evidence sufficient to establish
intent to kill for capital murder conviction because defendant shot victim at
close range and fled scene).

          Even
viewing the evidence in a neutral light and considering Schneider’s exculpatory
statements and cooperation with the police, the evidence is sufficient to
support Schneider’s conviction.  The jury
was well within its discretion to disbelieve Schneider’s self-serving
statements to the police, Bustamante v. State, 106 S.W.3d 738, 741 (Tex.
Crim. App. 2003), and we accord due deference to the jury regarding the weight
and credibility of the evidence.  Jones,
944 S.W.2d at 648–49 (citing Clewis v. State, 922 S.W.2d 126, 133
(Tex. Crim. App. 1996)).  The evidence
supporting Schneider’s guilt is not so weak or so against the overwhelming
weight of the contrary evidence as to render the jury’s verdict clearly wrong
and manifestly unjust; therefore, we hold that the evidence is factually
sufficient to support the conviction.

Admissibility of Photograph

          Schneider
contends that the trial court abused its discretion by admitting a photograph
of Turner with his young son.  Schneider
urges that the photograph has no probative value because the State introduced another
photograph of Turner from the scene of the shooting that “certainly was much
more germane to the point at issue.” 
Schneider further asserts that the photograph was offered solely for the
purpose of inflaming the jurors’ sympathies. 
Thus, according to Schneider, the trial judge should have excluded the
photograph under Texas Rule of Evidence 403.

          We
hold that Schneider failed to preserve this issue for review.  At trial, when the State tendered the
photograph of Turner with his son, defense counsel objected as follows:

MR. RODRIGUEZ:        Well,
Judge, it kind of shows him to be a -- you know, a loving dad and all.  That’s not the issue, Judge.  And they’ve got to come up with another
photograph.

 

MR. DIEPRAAM:           I
don’t have any other photographs.  That’s
it.

 

THE COURT:       Okay.  Hang on one second.  Well, although this picture shows him as a
dad or whatever, the testimony is out that he was a drug dealer not living with
the kid or taking care of the kid.  So,
I’m going to admit it.  Okay.

 

MR. RODRIGUEZ:        Okay, Judge.

          “Texas
Rule of Evidence 403 must be specifically invoked in order to preserve error
under that rule.”  Schultze v. State,
No. 01-02-00210-CR, slip op. at 26, 2005 WL 90731, at *11 (Tex. App.—Houston
[1st Dist.] Jan. 13, 2005, pet. filed) (op. on reh’g) (citing Montgomery
v. State, 810 S.W.2d 372, 389 (Tex. Crim. App. 1991) (op. on reh’g)); Tex. R. App. P. 33.1.  In addition, because “Rule 403 provides five
distinct grounds for excluding otherwise relevant evidence[,]”[5]
even if a party does object to the admission of evidence on “general Rule 403”
grounds, such an objection is not adequate because it “force[s] the trial judge
to determine which of the five specific grounds [is] applicable [and t]hus
[does] not give the judge any specific ground on which to rule.”  Williams v. State, 930 S.W.2d 898, 901
(Tex. App.—Houston [1st Dist.] 1996, pet. ref’d).

          Here,
Schneider did not specifically invoke Rule 403, and his objection did not
mention any of the five grounds for excluding evidence under Rule 403.  While he now argues on appeal that the
probative value of the photograph is substantially outweighed by the danger of
unfair prejudice, all he told the trial judge was that the photograph showed
Turner to be “a loving dad and all,” but not Rule 403 or any of the five
specific grounds upon which to base an objection.  Thus, his objection was insufficient to
preserve error.  Id.; see also
Molitor v. State, 827 S.W.2d 512, 518–19 (Tex. App.—Austin 1992), appeal
permanently abated, 862 S.W.2d 615 (Tex. Crim. App. 1993) (in murder case where
appellant objected that two photographs showing deceased with his children were
“irrelevant and prejudicial[,]” holding that objection was “too broad, general
and global” to preserve error under Rule 403). 
Accordingly, we overrule Schneider’s third issue.

Jury Argument

          In
his final issue, Schneider asserts that the prosecutor misstated the facts
during closing argument.  In closing, the
prosecutor addressed Ochoa’s testimony regarding the identity of the shooter as
follows:

          Next
thing is Roxie’s identification of Mike Whitmire.  Yeah, that’s kind of important.  But does anybody really believe that Mike
Whitmire did the shooting?  . . .  Sergeant Bozeman did a good job -- a very
good job of realizing that Roxie was just a little bit too traumatized by the
event to give a full and accurate detail of the shooting.  Keep in mind -- first of all, she knows Mike.

 

. . . .

So, because she knows Michael Whitmire, she said Mike
did the shooting.  But why did she tell
the police when the police came out there on September 22nd and September 23rd,
I didn’t see who did the shooting.  And I
don’t know who did the shooting.  I don’t
know who had the gun.

 

Schneider contends that the
prosecutor misstated the facts because Ochoa testified that she “may have” told
the police when they interviewed her immediately after the shooting that she
wasn’t exactly sure who was holding the gun, but she really couldn’t remember
exactly what she told the police.

          We
hold that Schneider failed to preserve this issue for review.  “[A] defendant’s failure to pursue to an
adverse ruling his objection to a jury argument forfeits his right to complain
about the argument on appeal.”  Cockrell
v. State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); DeRusse v. State,
579 S.W.2d 224, 235 (Tex. Crim. App. [Panel Op.] 1979) (“An objection to
argument must be pressed to the point of procuring a ruling or the objection is
waived.”).  A trial judge’s response that
“the jury w[ill] remember the evidence” is not a ruling on the objection and is
insufficient to preserve error.  DeRusse,
579 S.W.2d at 235; Mayberry v. State, 532 S.W.2d 80, 84 (Tex. Crim. App.
1976) (op. on reh’g) (“[j]ury will recall the evidence” does not preserve
error); Nichols v. State, 504 S.W.2d 462, 464–65 (Tex. Crim. App. 1974)
(same).

          Although
Schneider objected to the State’s closing argument, the trial court did not
rule on Schneider’s objection.  Rather,
the trial court responded by instructing the jury to “recall the testimony that
you heard in here in trial.  That’s the
evidence, what you heard in the testimony.” 
Because the trial court did not rule on Schneider’s objection, Schneider
may not complain about the State’s jury argument on appeal.  See Cockrell, 933 S.W.2d at 89; DeRusse,
579 S.W.2d at 235; Mayberry, 532 S.W.2d at 84; Nichols, 504
S.W.2d at 464–65.  Accordingly, we
overrule Schneider’s fourth issue.

 

Conclusion

          We
conclude that the evidence is legally and factually sufficient to support
Schneider’s capital murder conviction. 
We further conclude that Schneider did not properly preserve error with
respect to the admissibility of the photograph or the propriety of the State’s
closing argument.  We therefore affirm
the judgment of the trial court.

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Chief Justice
Radack and Justices Alcala and Bland.

Do not publish.  Tex.
R. App. P. 47.2(b).

 

 

 











[1] Ochoa testified that she believed the shooter to be
Mike Whitmire.  However, she also
testified that she “may have” told Sergeant Michael Bozeman at the scene of the
shooting that she wasn’t exactly sure who was holding the gun because she was
so scared.





[2] Schneider does not contend that the State failed to
prove the corpus delicti for the underlying offense of murder.

 





[3] The primary purpose of the corpus delicti rule
“is to assure that no person [is] convicted without some independent evidence
showing that the very crime to which he confessed was [actually] committed [by
someone].”  Gribble v. State, 808
S.W.2d 65, 71 (Tex. Crim. App. 1990).

 





[4] See, e.g., Hammond,
942 S.W.2d at 707 (corpus delicti of robbery was established in part by
independent evidence that police found victim’s property in appellant’s house).

 





[5] Texas Rule of Evidence 403 provides: “Although
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.”  Tex. R. Evid. 403.