NO. 07-05-0084-CR


IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



DECEMBER 7, 2005



______________________________




JESUS ANTU, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 64TH DISTRICT COURT OF HALE COUNTY;



NO. A15708-0409; HONORABLE ROBERT W. KINKAID, JR., JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ. and BOYD, S.J. (1)

MEMORANDUM OPINION


 Following an open plea of guilty, appellant Jesus Antu was convicted of driving while
intoxicated. The offense was enhanced to a third degree felony due to two prior
convictions, and he was sentenced to five years confinement and a $2,000 fine. By two
points of error, he contends (1) the indictment failed to establish a range of punishment for
a third degree felony because it failed to properly allege two prior offenses relating to the
operating of a motor vehicle while intoxicated, and (2) there was insufficient evidence to
conclude that he had twice been previously convicted of an offense relating to the operating
of a motor vehicle while intoxicated. We affirm.

 The State's indictment charges appellant with the offense of driving while intoxicated
on or about August 8, 2004. The enhancement portion of the indictment reads as follows:

 And it is further presented in and to said Court that, prior to the
commission of the aforesaid offense, on the 28th day of April, 2003, in the
64TH DISTRICT COURT of Hale County, Texas, in cause number A14669-0210, the defendant was convicted of an offense relating to the driving or
operating of a vehicle while intoxicated; and on the 24th day of June, 1997,
in the 64TH DISTRICT COURT of Hale County, Texas, in cause number
A11901-9411, the defendant was convicted of an offense relating to the
driving or operating of a motor vehicle while intoxicated . . . .

 After the indictment was read, the court asked appellant's counsel, "Do you have any
motion to set aside the indictment or other special plea or pleas to the form or substance
of the indictment?" Appellant's counsel replied that he did not. Appellant then admitted
that each and every allegation in the indictment was true and correct. Appellant now
contends the language "relating to the driving or operating of a vehicle while intoxicated"
fails to allege an offense which allows his conviction to be enhanced to a third degree
felony under section 49.09(b)(2) of the Penal Code because it does not include the term
"motor" as provided in the statute. We disagree.

 It is well established that an indictment must charge a person with the commission
of an offense and must allege all essential elements of the offense sought to be charged. 
Cook v. State, 902 S.W.2d 471, 476-77 (Tex.Cr.App. 1995). In order to complain on
appeal of a defect, error, or irregularity of form or substance in an indictment, a defendant
must object to the defect at trial. Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005 ). 
See also Tex. R. App. P. 33.1(a). However, a defendant's failure to object will not result
in the waiver of a complaint that an indictment fails to charge him with the commission of
an offense. See, e.g., Ex parte Patterson, 969 S.W.2d 16 (Tex.Cr.App. 1998). Here, the
indictment contains all of the essential elements required to convict appellant of felony DWI
under section 49.09(b)(2). Furthermore, appellant failed to object or otherwise inform the
court of the discrepancy in the wording of the enhancement allegations. Therefore, he
failed to preserve his complaint for appellate review, and his first point is overruled.

 By his second point, appellant claims the absence of the word "motor" in one the
enhancement allegations results in there being only one prior conviction for enhancement
purposes, thereby making the indictment insufficient to prove a third degree felony under
§ 49.09(b)(2). Again, based on our analysis above, appellant failed to preserve this
complaint for appellate review. He also argues that even though he testified that all of the
allegations in the indictment were true, the State did not prove them to be true. However,
apart from making that declaration in his brief, appellant wholly fails to present any
argument or authority to support this position. Thus, it presents nothing for our review. 
See Tex. R. App. P. 38.1(h) (requiring appellant's brief to contain a clear and concise
argument for the contentions made with appropriate citations to authorities and to the
record). Appellant's second point is overruled.

 Accordingly, the trial court's judgment is affirmed.

 Don H. Reavis

 Justice

Do not publish. 

 

 
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.



enter">NOVEMBER 16, 2009
                                       ______________________________

DAROLD O. SIMMONS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 137TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-415,500; HONORABLE CECIL G. PURYEAR, JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant Darold O. Simmons appeals from his jury conviction of the offense of
capital murder and the resulting life sentence without the possibility of parole. Through one
point of error, appellant argues the evidence of his commission of the predicate offense
of robbery was factually insufficient. Finding the evidence sufficient, we affirm the
judgment of the trial court.
 
Background
          Appellant’s capital murder


 indictment alleged that, on or about February 18, 2007,
he intentionally caused the death of Ross Mosley by stabbing him, and that appellant was
“then and there in the course of committing and attempting to commit the offense of
robbery.” Appellant plead not guilty.
          Between 7:15 and 7:30 on the Sunday morning of February 18, 2007, police were
called to a Lubbock address, where the body of the 72-year-old Mosley was found lying
face-down in the front yard. He had been stabbed. His wallet was found in his back
pocket. His pockets also contained his cell phone, $1.43 in change, and a small “multi-tool” on a key chain. A five-dollar bill was found inside his left jacket pocket. A ball cap and
a gin bottle were located next to him.
          As he often did, Mosley had participated in a neighborhood poker and gambling
session at the house of his friend Charles Kerr during the early morning hours. The game
began to break up about 4:00 a.m. Kerr testified that as Mosley prepared to leave, shortly
before 6:00 a.m., he asked Kerr to loan him some money because he had lost about
seventy-five dollars playing dice. His friend gave him ten one-dollar bills. Another witness
also said Kerr gave Mosley ten dollars. Mosley left, walking down the street. 
 
          Appellant was nineteen years old, lived in the neighborhood and was known to Kerr
as the grandson of a neighbor. Appellant also frequented Kerr’s house. He came by there
during the morning hours of February 18, but did not stay long. He left Kerr’s about an
hour-and-a-half before Mosley. 
          Just after 8:00 a.m., police arrested appellant for the sexual assault and robbery of
a female cab driver in the same neighborhood. When he was arrested for that offense, he
had $54 on him, one twenty, three fives and nineteen one-dollar bills. The cab driver
reported to officers that she had been robbed of “one $20, three to four five-dollar bills” and
“the rest were one-dollar bills.” No other money or property was found on appellant.
          Police shortly identified appellant as a suspect in Mosley’s death. His written
statement provided during an interview concerning Mosley’s death was entered at trial. In
his statements, appellant told of an encounter he had with Mosley that morning, after
Mosley left Kerr’s house. He said he saw Mosley walking on the street,


 approached
Mosley and asked to borrow five dollars. Mosley appeared not to hear him so appellant
asked again. In response, he said, Mosley took a knife out of his pocket and swung it at
appellant. Mosley dropped the knife and appellant said he then found the knife and swung
it twice at Mosley because he was afraid of him. Mosley turned and ran away. Appellant
said he picked up the ten dollars, which Mosley had dropped. According to appellant’s
statements, he then bought a beer and walked around, upset over Mosley’s attack on him,
before he encountered the cab driver.


 
          The medical examiner testified Mosley’s cause of death was a single stab wound
that penetrated his sternum and entered his heart. He said the stabbing blow would have
been forceful and most probably came from behind the victim. He further testified Mosley
would have fallen immediately to the ground when he sustained the stab wound, and that
his blood pressure would have dropped to zero quickly. He said Mosley would not have
been capable of “purposeful movement” for more than about twenty seconds after
sustaining the wound. The medical examiner found a second knife wound, penetrating the
subcutaneous tissue of Mosley’s abdomen. The little blood associated with that wound
indicated it was sustained when Mosley’s blood pressure was very low. Asked to compare
his findings with appellant’s version of his encounter with Mosley, the medical examiner
said the fatal stab wound was not caused by the type of swinging knife motion appellant
described. Appellant’s statements that Mosley attacked him were disputed also by
testimony that Mosley was not known to carry a knife and not known as a violent man. 
           The murder weapon was never found. DNA evidence showed Mosley’s blood on
the shirt appellant was wearing when he was arrested.
 
          The defense presented its case through the cross-examination of the State’s
witnesses and a patrol car DVD recording of events surrounding appellant’s encounter with
the cab driver. The defense highlighted evidence appellant did not rob Mosley, arguing it
was a case of manslaughter, not capital murder.
          After hearing the evidence and arguments of counsel, the jury convicted appellant
of capital murder as charged in the indictment. Because the State did not seek the death
penalty, the trial court automatically assessed appellant’s punishment at confinement for
life without the possibility of parole. This appeal followed.
Analysis
          On appeal, appellant does not contest the sufficiency of the evidence he murdered
Mosley, but challenges the factual sufficiency of the evidence supporting the robbery
element of the capital murder offense. That is, he contends the evidence is factually
insufficient to show he murdered Mosley while committing or attempting to commit the
offense of robbery. 
Standard of Review for Factual Sufficiency
          In capital murder committed during the course of a robbery, the factual sufficiency
standard applies to both the charged and underlying offenses. Russo v. State, 228 S.W.3d
779, 792 (Tex.App.–Austin 2007, pet. ref’d), citing Brewer v. State, 126 S.W.3d 295, 297
(Tex.App.–Beaumont 2004, pet. ref’d). In a factual sufficiency review, we begin with the
assumption that the evidence is legally sufficient, that is, it was such as to permit a rational
jury to find guilt beyond a reasonable doubt. Santellan v. State, 939 S.W.2d 155, 164
(Tex.Crim.App. 1997), citing Clewis v. State, 922 S.W.2d 126, 134 (Tex.Crim.App. 1996).
A factual sufficiency review of the evidence is “barely distinguishable” from the legal
sufficiency review under Jackson v. Virginia. Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence
supporting guilt, though legally sufficient, is so weak that the jury’s verdict seems clearly
wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury’s
verdict is against the great weight and preponderance of the evidence. Id.; Watson v.
State, 204 S.W.3d at 414-15; Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). 
In a factual sufficiency review, we consider all the evidence, in a neutral light. Marshall,
210 S.W.3d at 625; Watson, 204 S.W.3d at 414. Although an appellate court’s authority
to review factual sufficiency permits the court to disagree with the fact finder’s
determinations, even to a limited degree those concerning the weight and credibility of the
evidence, the appellate court must accord them due deference. Marshall, 210 S.W.3d at
625; Johnson, 23 S.W.3d at 9. When there is a conflict in the evidence, to find it factually
insufficient we must first be able to say, with some objective basis in the record, that the
great weight and preponderance of all the evidence contradicts the jury’s verdict. Watson,
204 S.W.3d at 417. We must also discuss the evidence that, according to the appellant,
most undermines the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App.
2003). 
 
Applicable Law          Appellant was convicted of capital murder under section 19.03(a)(2) of the Penal
Code. Tex. Penal Code Ann. § 19.03(a)(2) (Vernon 2003). As pertinent here, the statute
provides a person commits capital murder if he commits murder as defined under Penal
Code section 19.02(b)(1) and intentionally commits the murder in the course of committing
robbery. Under section 19.02(b)(1), a person commits an offense if he intentionally or
knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1) (Vernon
2003).
          A person commits robbery “if, in the course of committing theft . . . and with intent
to obtain or maintain control of the property, he: (1) intentionally, knowingly or recklessly
causes bodily injury to another; or (2) intentionally or knowingly threatens or places another
in fear of imminent bodily injury or death.” Tex. Penal Code Ann. § 26.02(a)(2) (Vernon
2003). Proof of theft requires an unlawful appropriation of property with intent to deprive
its owner of it. Tex. Penal Code Ann. § 31.03 (Vernon 2007).
          Intent to steal may be inferred from actions or conduct. Scott v. State, 934 S.W.2d
396, 401 (Tex.App.–Dallas 1996, no pet.), citing Johnson v. State, 541 S.W.2d 185, 187
(Tex.Crim.App. 1976). There is no requirement that property stolen must be recovered in
whole or in part to prove the offense of robbery. Russo, 228 S.W.3d at 794 , citing Chaney
v. State, 474 S.W.2d 711, 712 (Tex.Crim.App. 1972); Dean v. State, 154 S.W.2d 459
(Tex.Crim.App. 1941). Case law provides that to prove capital murder committed during
the course of robbery, the State must show, inter alia, in addition to the murder, that the
defendant possessed the specific intent to obtain or maintain control of the victim’s
property either before or during the commission of the murder. Shuffield v. State, 189
S.W.3d 782, 791 (Tex.Crim.App. 2006); Herrin v. State, 125 S.W.3d 436, 441-43
(Tex.Crim.App. 2002); Conner v. State, 67 S.W.3d 192, 197-98 (Tex.Crim.App. 2001). 
The State “must prove a nexus between the murder and the theft, i.e., that the murder
occurred in order to facilitate the taking of the property.” Ibanez v. State, 749 S.W.2d 804,
807 (Tex.Crim.App. 1986). Proof that the robbery was committed as an afterthought and
unrelated to the murder is not sufficient. Herrin, 125 S.W.3d at 441, citing Conner, 67
S.W.3d at 197.
          Appellant’s factual sufficiency challenge incorporates a contention the State’s
evidence does not establish the corpus delicti of the robbery. A criminal conviction cannot
be based on a defendant’s extrajudicial confession unless the confession is corroborated
by independent evidence tending to establish the corpus delicti. Weaver v. State, 265
S.W.3d 523, 532 (Tex.App.–Houston [1st Dist.] 2008, pet. ref’d). Some evidence,
independent of the defendant’s statements, must show that the crime actually occurred,
though the independent evidence need not identify the defendant as the culprit. Salazar
v. State, 86 S.W.3d 640, 644-45 (Tex.Crim.App. 2002). The corroborating evidence also
need not prove the underlying offense conclusively; all that is required is that some
evidence makes the commission of the offense more probable than it would be without the
evidence. Cardenas v. State, 30 S.W.3d 384, 390 (Tex.Crim.App. 2000); Gribble v. State,
808 S.W.2d 65, 72 (Tex.Crim.App. 1990). The standard also has been stated as requiring
that the extrajudicial confession be corroborated “by other evidence tending to show that
a crime was committed.” Gribble, 808 S.W.2d at 70. In a capital murder case like this, the
corpus delicti of the offense consists of the corpus delicti of the murder and of the
accompanying offense. Cardenas, 30 S.W.3d at 390; Gribble, 808 S.W.2d at 71. 
Application
          Appellant’s specific arguments are that the evidence is factually insufficient to show
a robbery occurred at all, and that, if a robbery occurred, the evidence is similarly
insufficient to show he formed, before or during the stabbing, the requisite intent to rob
Mosley. 
          Appellant’s corpus delicti contention here essentially is that no evidence but his
extrajudicial statements shows an assault on Mosley was committed “in the course of
committing theft . . . and with intent to obtain or maintain control of the property.” See Tex.
Penal Code Ann. § 26.02(a)(2) (Vernon 2003) (definition of robbery). Said another way,
appellant contends there is no evidence outside his extrajudicial statements that any nexus
existed between Mosley’s murder and a theft, that is, “that the murder occurred in order to
facilitate the taking of the property.” Ibanez, 749 S.W.2d at 807. We must disagree. 
Keeping in mind that the evidence corroborating the corpus delicti “need not be great,”
Gribble, 808 S.W.2d at 72, the evidence here that Mosley had ten dollars with him when
he walked away from Kerr’s house and did not have it when his body was found suffices.



That evidence tends to show Mosley was robbed, particularly when coupled with the
circumstances of his nearly sudden death.
          Reviewing the factual sufficiency of the evidence that a robbery occurred, we
consider the entire record, including appellant’s statements confirming that Mosley had the 
ten dollars when appellant approached him, that appellant unsuccessfully asked to borrow
money and that appellant left with the money after his confrontation with Mosley. To this
we add the testimony that appellant, very shortly after his encounter with Mosley, took all
the cab driver’s cash after threatening to kill her. We also agree with the State that the
medical examiner’s testimony that Mosley was most likely killed from behind suggests the
murder was a means to facilitate the taking of Mosley’s money, particularly in the absence
of evidence suggesting another motive for such an attack.
          As evidence showing the murder did not occur in the course of a theft, appellant
points out Mosley had a five-dollar bill, some change and a cell phone that were not taken,
and that his wallet was undisturbed in his back pocket. Thus, appellant notes, if Mosley 
did not have the ten dollars Kerr gave him when he was attacked, there is no evidence
anything was taken from him. With respect to the ten dollars, appellant points to the fact
the money found in his possession matches, even to the number of the bills and their
denominations, the cash the cab driver said he took from her. Appellant argues this
circumstance strongly suggests he did not take ten dollars from Mosley. 
          With respect to the other items on Mosley’s body, the State responds that the body
was lying face-down, making it more difficult for items to be taken from his front pockets. 
The State also notes Mosley was killed in the front yard of a residence where, even early
on a Sunday morning, his killer would not have had the luxury of time to search his pockets
as he would have in a more secluded location. The State also responds that appellant’s
own statement recites he ended up with the ten dollars Mosley had and recites that he
bought beer after his encounter with Mosley and before he saw the cab driver.


 
          Appellant asserts Brewer, 126 S.W.3d 295, supports his position the robbery
evidence is factually insufficient. There, the court affirmed Brewer’s murder conviction but
found the evidence the murder was committed in the course of a robbery legally insufficient
despite evidence Brewer had just given the victim several hundred dollars for drugs,
Brewer doubted the victim had sold him the agreed-upon amount of drugs and was angry,
and the victim’s wallet, containing no money, was found with his body. Id. at 302-03. The
court found no physical or testimonial direct evidence that a theft or robbery of the victim
took place, much less direct evidence implicating Brewer in such an offense. It also found
no evidence, even circumstantial, showing Brewer formed the intent to commit a robbery
before or during the murder. Id. at 303. By contrast, here, our analysis must include
appellant’s own statements providing direct evidence Mosley had the ten dollars when their
encounter began and appellant had the ten dollars after their encounter. Granted, the
evidence may not account for the whereabouts of the ten dollars, except for appellant’s
statement he bought beer, but recovery of the stolen property is not an essential part of the
proof of robbery. Russo, 228 S.W.3d at 794.
          Appellant also relies on Herrin, 125 S.W.3d 436, another case in which the evidence
the murder was committed in the course of robbery was found legally insufficient. Id. at
442. Herrin also is to be distinguished from the case at bar. The court there found no
evidence that Herrin knew the victim had any money on his person, nor evidence linking
Herrin with the victim’s wallet. The court also rejected the State’s argument that an intent
to steal the victim’s money could reasonably be inferred from evidence the victim owed
Herrin’s father money. In so doing, the court noted Herrin had money in his bank account,
suggesting he did not need money. Id. at 441-42. 
          Appellant’s statement says he approached Mosley asking to borrow money. There
was testimony appellant had no job. The cab driver who testified appellant took her money
that morning also said appellant told her he needed money. Appellant was in the cab
when she said she had made $160 driving the cab the night before, and saw her fare pay
her $25. Unlike Herrin, the jury here heard evidence that appellant knew Mosley had
money, desired money from Mosley, left with ten dollars Mosley had been carrying, needed
money, and shortly thereafter robbed another person.
           Having reviewed the entire record in a neutral light, we conclude the evidence
establishing both that appellant’s murder of Mosley was in the course of a robbery, and that
appellant formed the intent to commit a robbery at the time of the murder is factually
sufficient. The evidence favoring the verdict is neither so weak nor contradicted by
contrary evidence such that the verdict is contrary to the great weight and preponderance
of all the evidence or manifestly unjust. We overrule appellant’s point of error, and affirm
the judgment of the trial court.
 
                                                                           James T. Campbell

                                                                                     Justice









Do not publish.