

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-07-444-CV

## IN THE INTEREST OF D. A. H., A JUVENILE,

## NUMBER 13-07-450-CV

## IN THE INTEREST OF D. H., A JUVENILE,

## On appeal from the Juvenile Court of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Yañez**

A jury found that appellants, D.A.H. and D.H.,[1] engaged in delinquent conduct by

---

[1] Both boys, who are twins, were fifteen at the time of the incident and sixteen at the time of trial, and have the initials "D.A.H." For ease of reference, we will refer to the juvenile defendant in trial court cause number 07-02-01227-JV (appellate cause number 13-07-444-CV) as "D.A.H.," and to the juvenile defendant in trial court cause number 07-02-01225-JV (appellate cause number 13-07-450-CV) as "D.H."

committing the offense of unauthorized use of a motor vehicle.[2] The trial court ordered

appellants committed to the Texas Youth Commission (TYC) for an indeterminate period

of time.[3] In a single issue, D.A.H. contends the trial court erred in admitting evidence of

certain extraneous conduct. In four issues, D.H. contends (1) his counsel was ineffective,

(2) the trial court erred in admitting extraneous conduct evidence, and (3) the evidence is

legally and factually insufficient to support the jury's verdict. We affirm the trial court's

judgments in both causes.

## I. Background

Kristen H. ("Mrs. H."), appellants' step-mother,[4] testified that on June 7, 2006, she

had a doctor's appointment for her teenage son.[5] When they arrived at the doctor's office,

D.A.H. and D.H. chose to stay in the car instead of waiting inside. Mrs. H. testified she

rolled all the windows down, pulled the keys out of the ignition, and tossed them on the

dashboard; the boys were sitting in the back seat. Approximately a half-hour later, Mrs.

H. was notified that her car had been involved in an accident. Both boys admitted they had

driven the car around the parking lot; in doing so, they sideswiped another vehicle parked

in the lot. Ronald Patton, who was sitting in a car in the parking lot, witnessed the incident

and testified at trial. He testified that he saw both boys driving the car. Officer Michael

Dean testified that he investigated the accident. According to Officer Dean, both boys

---

[2] See TEX. PENAL CODE ANN. § 31.07 (Vernon 2003).

[3] See TEX. FAM. CODE ANN. § 54.04(d)(2) (Vernon Supp. 2007).

[4] Mrs. H. is married to appellants' biological father; she adopted appellants in 2000.

[5] Mrs. H.'s biological son (the twins' step-brother) is autistic.

admitted driving the car; D.H. was driving when he sideswiped the parked vehicle. Beverly Kemicic, the owner of the sideswiped vehicle, testified her car was damaged in the amount of approximately $3,200.

The defense presented only one witness, the testimony of D.A.H.'s guardian ad litem. The jury found appellants guilty, and the trial court ordered their commitment to T.Y.C.

## II. D.A.H.'s Issue: Admission of Extraneous Conduct Evidence

D.A.H. complains that the trial court erred in admitting evidence of his extraneous conduct. Specifically, D.A.H. complains that Mrs. H. was allowed to testify that (1) he and D.H. had run away from home, (2) he had been sent to military school, (3) he had disciplinary problems in high school, and (4) he had an obsession with a girlfriend. D.A.H. contends that this "extraneous conduct evidence had a substantial and injurious prejudicial effect or influence on the jury, requiring reversal."

The State argues that (1) by failing to specifically object that the testimony violated rule 404(b), D.A.H. failed to preserve the issue; and (2) by attempting to question Mrs. H.'s motive and character, D.A.H.'s counsel "opened the door" to testimony regarding D.A.H.'s history of problematic behavior. We agree with the State on both counts.

### A. Standard of Review and Applicable Law

We review a trial court's evidentiary rulings under an abuse-of-discretion standard and will not disturb the trial court's ruling unless it falls outside the zone of reasonable

3

disagreement.[6]  If there is evidence supporting the trial court's decision to admit evidence, there is no abuse, and the appellate court must defer to that decision.[7]  Even when the trial judge gives the wrong reason for his decision, if the decision is correct on any theory of law applicable to the case, it will be sustained.[8]

As a general rule, specific acts of misconduct may not be introduced to impeach a party or witness.[9]  However, if the testimony of a witness during direct examination "opens the door" or leaves a false impression with the jury as to the extent of the witness's prior arrests, convictions, charges, or trouble with the police, opposing counsel may introduce what would have otherwise been irrelevant evidence about the witness's past criminal history.[10]  In addition, when evidence is necessary to explain a matter "opened up" by the other party, a court may decide to admit evidence that would otherwise be inadmissible.[11]

In order for an issue to be preserved on appeal, there must have been a timely and specific objection raised at trial.[12]  The objection made at trial must mirror the contention

---

[6] *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Mumphrey v. State*, 155 S.W.3d 651, 660 (Tex. App.–Texarkana 2005, pet. ref'd) (citing *Green v. State*, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996)).

[7] *Osbourn*, 92 S.W.3d at 538.

[8] *Id.*

[9] *See Prescott v. State*, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988).

[10] *See Reyna v. State*, 99 S.W.3d 344, 349 (Tex. App.–Fort Worth 2003, pet. ref'd).

[11] *See* TEX. R. EVID. 107; *Credille v. State*, 925 S.W.2d 112, 116 (Tex. App.–Houston [14th Dist.] 1996, pet. ref'd).

[12] *See* TEX. R. APP. P. 33.1.

on appeal or the issue will be waived.[13]

## B. Discussion

On cross-examination, D.A.H.'s counsel asked Mrs. H., "Isn't it true that you have no intention of picking up these boys—." When the prosecutor objected on relevance grounds, D.A.H.'s counsel stated that the testimony was "highly relevant as to [Mrs. H.'s] motive. Her motive is to get rid of these kids[,] and she's using this court system to do it." Mrs. H. responded that she could not answer the question [whether she would pick the boys up if they were found not guilty] "with a yes or no answer." She also stated, "[i]f you want to delve into history—if you wanted to delve into the history of these children, then—" Finally, Mrs. H. answered that it was not her intent to pick the boys up.

On re-direct examination by the State, the prosecutor asked Mrs. H. if there had been significant problems with both boys prior to the driving incident. Mrs. H. said, "yes." The prosecutor then asked if the boys had run away from home. D.A.H.'s counsel objected as to "relevance." The prosecutor responded that D.A.H.'s counsel had "kicked the door wide open." The trial court overruled counsel's objection. When Mrs. H. began to testify regarding one of the times the boys ran away, D.A.H.'s counsel again objected on the basis of relevance. The trial court overruled the objection. The prosecutor then asked Mrs. H. if she had sent D.A.H. to military school. D.A.H.'s counsel again objected as to relevance. The prosecutor responded that D.A.H.'s counsel "tried to turn her into a terrible mother, and I was trying to see what steps they took to help." The trial court overruled the objection. D.A.H.'s counsel later objected "to getting into terms of the

---

[13] *See Santellan v. State*, 939 S.W.2d 155, 171 (Tex. Crim. App. 1997); *Doyle v. State*, 24 S.W.3d 598, 602 (Tex. App.–Corpus Christi 2000, pet. ref'd).

[military school] program." The trial court stated, "once you've opened the door, you've opened the door." Finally, Mrs. H. testified regarding disciplinary problems D.A.H. had experienced in high school and that he had developed an unhealthy obsession with a girlfriend. D.A.H.'s counsel objected to the testimony "as being more prejudicial than probative." The trial court overruled the objection.

We conclude that with regard to the testimony concerning D.A.H. running away and being sent to military school, the objection at trial—relevance—differs from D.A.H.'s claim on appeal. Thus, D.A.H. waived any alleged error as to the admission of this testimony.[14] With regard to the testimony concerning D.A.H.'s disciplinary problems in high school and his obsession with a girlfriend, we agree that D.A.H.'s counsel "opened the door" to the boys' past behavioral problems. As the trial court explained, such testimony was "in direct relation to [D.A.H.'s counsel's] questions relating to [Mrs. H.] not wanting the children back and this is to explain what those problems have been and that is what the door was I was talking about." We hold the trial court did not abuse its discretion in ruling that D.A.H. "opened the door" to the admission of the evidence regarding his past behavioral problems. We overrule D.A.H.'s sole issue.

### III. D.H.'s Issues

### A. Ineffective Assistance

In his first issue, D.H. contends he was denied effective assistance of counsel. Specifically, in a sub-issue, D.H. complains his counsel was ineffective because he failed to object to the evidence of D.A.H.'s prior bad acts and failed to request a severance from

---

[14] *See Santellan*, 939 S.W.2d at 171; *Doyle*, 24 S.W.3d at 602.

6

D.A.H.'s trial. D.H.'s entire argument regarding this sub-issue is as follows:

> There is a reasonable probability that the result of the proceedings would have been different had the prior bad acts of [D.A.H.] not prejudice [sic] defendant. The only testimony against Appellant concerning prior acts were issues concerning and being attributed to mental health.

In accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and the record.[15] We conclude this sub-issue is inadequately briefed, and that D.H. has waived error. We overrule D.H.'s first sub-issue.

In his second sub-issue, D.H. contends his counsel was ineffective because he failed to object to D.H. appearing before the jury dressed in his orange detention suit. In support of his argument that he was harmed by his counsel's failure to object, D.H. contends that "[i]t can reasonably be inferred from case history that the outcome of a jury verdict would be different if counsel had objected to Appellant appearing in prison attire." D.H. points to the testimony of Ronald Patton, who acknowledged at trial that he was primarily able to recognize the boys because they were at trial in orange suits.

The State responds that although an accused cannot be compelled to stand trial in prison clothes, D.H. chose, through his counsel, to do so. The State also argues that because the evidence of the boys' guilt was overwhelming, the decision by D.H.'s counsel to allow D.H. to appear in prison clothes was likely a trial strategy to gain sympathy from the jury. In support, the State notes that D.H.'s counsel made a conscious decision on the matter, specifically noting to the trial court that he had no objection to D.H. appearing in

---

[15] TEX. R. APP. P. 38.1(h); *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996).

prison clothes.[16]

## 1. Standard of Review and Applicable Law

To prove ineffective assistance of counsel, appellant must demonstrate that: (1) his counsel's performance was deficient because it fell below an objective standard of reasonableness; and (2) there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.[17]  In the context of a guilty plea, appellant satisfies the second prong of the *Strickland* test if he shows there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty, but rather would have insisted on going to trial.[18]

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and we will sustain allegations of ineffectiveness only if they are firmly founded in the record.[19]  We also indulge a strong presumption that counsel's actions were motivated by sound trial strategy, and we will not conclude the action was deficient unless it was so outrageous that no competent attorney would have

---

[16] At a pretrial hearing, the trial court specifically asked counsel for each appellant if there was any objection to appellants appearing in their orange detention suits.  Counsel for each appellant stated that there was no objection.

At voir dire, in explaining several distinctions about the juvenile system, counsel for D.A.H. told the venire panel:

> You see the boys over here?  Obviously they are in custody.  We didn't go out and buy them those clothes to wear.  We can't bond them out.  Certain conditions have to be met for their release, and one of those have to—they have to have some place to go, and, basically, that's been a problem.

[17] *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

[18] *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999).

[19] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

8

engaged in such conduct.[20] We look to the totality of the representation and not to isolated instances of error or to only a portion of the proceedings.[21] In the absence of evidence regarding counsel's reasons for the challenged conduct, the record on direct appeal is simply undeveloped and cannot adequately reflect the alleged failings of trial counsel.[22]

"If a defendant timely objects to being put to trial while dressed in prison clothes, he should not be compelled to stand trial in that attire."[23] However, a defendant must make a timely objection against being tried in prison clothes or such rights are waived.[24] In some instances, a decision to be tried in jail clothing is a matter of trial strategy.[25]

### 2. Discussion

Here, D.H. did not file a motion for new trial raising ineffective assistance that would have allowed counsel to explain any trial strategy upon which his decisions may have been based. Because there is no record to show trial counsel's reasons for acting or failing to act in the manner challenged, D.H. has failed to establish that his counsel's assistance was ineffective.[26] Moreover, D.H. has not established the second prong of *Strickland* because

---

[20] *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

[21] *Id.*

[22] *Freeman v. State*, 125 S.W.3d 505, 506-07 (Tex. Crim. App. 2003).

[23] *Randle v. State*, 826 S.W.2d 943, 944-45 (Tex. Crim. App. 1992).

[24] *Estelle v. Williams*, 425 U.S. 501, 508 (1976); *Randle*, 826 S.W.2d at 944-45.

[25] *See Estelle*, 425 U.S. at 508 (stating that "instances frequently arise where a defendant prefers to stand trial before his peers in prison garments. The cases show, for example, that it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury."); *Randle*, 826 S.W.2d at 945 (noting decision to be tried in jail clothing may be a matter of strategy).

[26] *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

he has failed to show that but for his counsel's failure to object to his appearing in prison clothes, the result of the proceeding would have been different.[27] Appellants' identity was not an issue at trial. Mrs. H. and Officer Dean testified that both boys admitted driving the car. We overrule D.H.'s first issue.

## B. Admission of Prejudicial Evidence

In his second issue, D.H. complains he was prejudiced by the admission of evidence concerning D.A.H.'s past behavioral problems. D.H. asserts that his counsel's "objection to the prejudicial effect of [D.A.H.'s] inadmissible character evidence should have alerted the trial court to its duties to severe [sic] these Respondents to adequately protect [D.H.'s] rights." D.H. also notes, "[i]n the event, the Court finds that counsel did not preserve error for not making a motion to severe [sic] Appellant's trial[,] this issue shall be addressed under ineffective assistant [sic] of counsel."[28]

We have already determined that the trial court did not abuse its discretion in admitting evidence of D.A.H.'s past behavioral problems. D.H. does not provide any citation to the record identifying an objection by his counsel that "should have alerted the trial court" to its duty to sever D.H.'s case from his brother's. We have reviewed the record, and have found neither an objection by D.H.'s counsel to the evidence of D.A.H.'s past behavioral problems nor a request for a severance. We hold D.H. waived any

---

[27] *See Strickland*, 466 U.S. at 694; *Thompson*, 9 S.W.3d at 812; *see also Shelby v. State*, No. 14-01-00581-CR, 2002 Tex. App. LEXIS 7888, at *23 (Tex. App.–Houston [14th Dist.] 2002, no pet.) (not designated for publication) (rejecting ineffective assistance claim based on counsel's failure to object to appellant being tried in prison clothes; although counsel's performance fell below an objective standard of reasonableness, appellant failed to prove that the outcome of the trial would have been different but for counsel's error).

[28] We have already determined that D.H.'s claim of ineffective assistance fails because there is no record to show trial counsel's reasons for acting or failing to act in the manner challenged.

challenge to the admission of the evidence regarding D.A.H.'s conduct and to the trial court's failure to sever.[29] We overrule D.H.'s second issue.

## C. Legal and Factual Sufficiency

In his third issue, D.H. contends the evidence is legally and factually insufficient to support his conviction because "[t]here was no corroborated testimony linking [him] to the charge." Specifically, D.H. argues that (1) Officer Dean was not asked to identify the appellants at trial; (2) Patton did not identify the boys; (3) Kemicic testified she could not identify the boys; and (4) Mrs. H. did not witness the accident. According to D.H., there are "no corroborating witnesses," there is "no evidence" to support the jury's finding of guilt, and the evidence is "too weak to support the jury's finding of guilt."

### 1. Standard of Review and Applicable Law

Evidence is legally insufficient if, when viewed in a light most favorable to the verdict, a rational jury could not have found each element of the offense beyond a reasonable doubt.[30] The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.[31] Thus, when performing a legal-sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.[32] We must resolve any inconsistencies in the testimony in favor

---

[29] *See* TEX. R. APP. P. 33.1.

[30] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

[31] *Jones*, 944 S.W.2d at 647.

[32] *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

11

of the verdict.[33]  The legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case.[34]

When conducting a factual-sufficiency review, we view all of the evidence in a neutral light.[35]  We may set the verdict aside if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust; or (2) the verdict is against the great weight and preponderance of the evidence.[36]  However, while we may disagree with the jury's conclusions, we must exercise appropriate deference to avoid substituting our judgment for that of the jury, particularly in matters of credibility.[37]  In addition, we must discuss the evidence that, according to appellant, most undermines the jury's verdict.[38]  We also measure factual sufficiency of the evidence by a hypothetically correct jury charge.[39]

A person commits the offense of unauthorized use of a motor vehicle if he intentionally or knowingly operates another's motor-propelled vehicle without the owner's consent.[40]

---

[33] *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

[34] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

[35] *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Cain v. State*, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996).

[36] *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)).

[37] *Lancon*, 253 S.W.3d at 704-05; *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005); *see Watson*, 204 S.W.3d at 414 (stating that a court should not reverse a verdict it disagrees with, unless it represents a manifest injustice even though supported by legally sufficient evidence).

[38] *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

[39] *Grotti v. State*, No. PD-134-07, 2008 Tex. Crim. App. LEXIS 761, at *16 (Tex. Crim. App. June 25, 2008).

[40] *See* TEX. PENAL CODE ANN. § 31.07 (Vernon 2003).

## 2. Discussion

We agree that Officer Dean was not asked to identify appellants at trial. He did testify, however, that both boys admitted driving the vehicle. He testified D.H. was driving when he sideswiped Kemicic's parked vehicle. Although Kemicic declined to identify appellants at trial, she testified that she talked to the boys, who were still in the car, upon learning of the accident; when Mrs. H. came out, she and Mrs. H. exchanged insurance information.

We disagree with D.H.'s characterization that Patton did not identify the boys. On direct examination, Patton described watching the car circle around the parking lot three times. Patton gave the following testimony:

Q [State]: Okay. Could you identify the boys that were driving the vehicle?

A [Patton]: Well, they got longer hair now, but they—

Q: Do you see the boys in the courtroom today that were driving the vehicle on June 7th?

A: Oh, yes.

Q: Okay. Could you please point to them and identify them by what they are wearing?

A: Well, the one here is wearing an orange jump suit and this one here is wearing one also.

On cross-examination, Patton testified as follows:

Q [D.H.'s counsel]: If you saw either one of these boys on the street, would you recognize them as the boys who were driving the vehicle that day?

A: Yeah. I seen the green car a couple days later going down 75 going through Conroe.

Q: Okay. Okay. Can you tell which one was which?

13

A: Well, the one who has longer hair, but he had a butt [sic] then, that one there, a buzz cut.

Q: He had a buzz cut at the time of the incident?

A: Yes.

Q: And you think this one is the one with the longer hair.

A: Yeah, I think.

Q: Not positive?

A: (Moves head from side to side).

Q: Is your identification of these boys because—are you sure it's not because they are sitting in here in these orange suits?

A: No, they were in the car, but I was about 30, 40 feet away. I wasn't in direct contact with them, no. I could just see one of them had longer hair than the other.

Q: Okay. But you just said you would recognize them walking down the street, from that one incident you saw them?

A: You are right.

Q: You don't think—you probably wouldn't recognize them walking down the street?

A: Probably not.

Q: Okay. Do you know if either one of them were wearing glasses at the time?

A: I was too far away.

Q: Do you wear glasses?

A: I have reading glasses, yeah.

Q: You wear contacts?

A: No.

14

Q: Do you have any problem seeing things far away?

A: No, except close.

Q: Is it your testimony that your main reason for identifying them today is because they are the ones sitting in here in these orange suits, that's how you primarily recognize them as the ones you believe who were the boys that were there that day?

A: Yeah.

Although Patton's testimony was at times confused and somewhat contradictory, we conclude that he identified appellants and testified that they both drove the car around the parking lot on the day of the accident. Mrs. H. testified that she owned the car and did not give either appellant permission to drive it; she also testified that both boys admitted driving the car, and that D.H. apologized for wrecking her car. Officer Dean testified that both boys admitted driving the car, and that he issued a citation to D.H. We conclude that, when viewed in the light most favorable to the verdict, the above evidence is sufficient to support a conviction for unauthorized use of a motor vehicle.[41] We also conclude that the evidence is neither so weak as to render the verdict clearly wrong or manifestly unjust, nor that the verdict is against the great weight and preponderance of the evidence.[42] We overrule D.H.'s third issue.

### D. Corroborating Evidence

In his fourth issue, D.H. contends there was no evidence corroborating his extra-judicial confession (to Officer Dean) that he was driving the car in the parking lot. According to D.H., his confession alone is insufficient to support the jury's finding of guilt. D.H. cites

---

[41] *See Jones*, 944 S.W.2d at 647.

[42] *See Watson*, 204 S.W.3d at 415.

*Gribble v. State* in support of the proposition that a defendant's extra-judicial confession must be corroborated by other evidence tending to show that a crime was committed.[43]

The State responds that "[t]here was plenty of corroboration." We agree. Mrs. H. observed D.H. in the car immediately after the incident. She also testified that D.H. apologized for wrecking her car. Patton testified he observed both boys driving the vehicle around the parking lot. We conclude D.H.'s extra-judicial confession was corroborated by other evidence tending to show that a crime was committed.[44] We overrule D.H.'s fourth issue.

## IV.  Conclusion

We affirm the trial court's judgments in both causes.

LINDA REYNA YAÑEZ,
Justice

Memorandum Opinion delivered and filed
this the 27th day of August, 2008.

---

[43] *See Gribble v. State*, 808 S.W.2d 65, 70 (Tex. Crim. App. 1990).

[44] *See id.*

16